Filed 7/21/15   Certified for publication 8/19/15 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ASSOCIATION FOR LOS ANGELES DEPUTY SHERIFFS et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> LOS ANGELES TIMES COMMUNICATIONS LLC, <br><br> Defendant and Respondent. | B253083 <br><br> (Los Angeles County <br> Super. Ct. No. BC520745) |

APPEAL from an order of the Superior Court of Los Angeles County, Michelle R. Rosenblatt, Judge.  Affirmed.

Green & Shinee and Elizabeth J. Gibbons; Benedon & Serlin, Gerald M. Serlin and Kelly R. Horwitz for Plaintiffs and Appellants.

Davis Wright Tremaine, Kelli L. Sager, Rochelle L. Wilcox and Daniel A. Laidman; Los Angeles Times Communications and Jeffrey D. Glasser for Defendant and Respondent.

"In the First Amendment the Founding Fathers gave the free press the protection it must have to fulfill its essential role in our democracy.  The press was to serve the governed, not the governors."  (*New York Times Co. v. United States* (1971) 403 U.S. 713, 717 (*New York Times*.)  "[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." (*Nebraska Press Assn. v. Stuart* (1976) 427 U.S. 539, 559 (*Nebraska Press*).)  "The damage can be particularly great when the prior restraint falls upon the communication of news and commentary on current events."  (*Ibid.*)

In this case, the union representing deputy sheriffs in the Los Angeles County Sheriff's Department sued to enjoin the *Los Angeles Times* from publishing news reports about the Department's hiring of officers who used to work for the County's Office of Public Safety.  The union alleged that a *Times* reporter had documents and information from the applications and background checks on the deputies.  The trial court granted the *Times*' anti-SLAPP motion.[1]  The union and unnamed Doe plaintiffs appeal.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

1.  *The Office of Public Safety and the Los Angeles County Sheriff's Department*

According to appellants, the Los Angeles County Office of Public Safety (OPS) used to be a law enforcement agency separate from the Los Angeles County Sheriff's Department (LASD).  In 2010, the County decided to merge OPS into LASD.  Apparently, OPS officers who wanted to work for LASD were required to complete application forms for LASD.  LASD hired former OPS officers to work as deputy sheriffs.

The LASD application form is 17 pages long.  The form asks for (among other things) the names and addresses of family member, previous employment, military

---

[1]  A SLAPP is a Strategic Lawsuit Against Public Participation.  A defendant facing such a lawsuit may file a special motion to strike the complaint.  (Code Civ. Proc., § 425.16.)

service, educational background, current debts, monthly income and expenditures, and references.  The application form also requires applicants to state whether they have ever been fired from a job or reprimanded at work, expelled or suspended from school, court martialed or otherwise disciplined by the military, arrested as a juvenile or adult, been the subject of a call to police, or had their driver's license suspended or revoked.

The form does not say that the information the applicant provides will be kept in confidence.  Applicants also are required to sign an "Information Waiver" authorizing others to release "confidential and privilege [*sic*]" information to LASD "[f]or [the] specific purpose" of LASD's consideration of the application.  At least as of September 2013, LASD "assured" the applicant "of the confidential nature of his application and that it will not be divulged."  It was the "understanding" of at least one deputy who joined LASD from OPS in June 2010 "when [he] submitted [his] application and the supporting documentation that all this information would be maintained by the Sheriff's Department as confidential."  At least as of September 2013, LASD's practice was to contact all five references an applicant listed and to ask, for example, about the applicant's temperament, drinking habits, and drug use. At least as of September 2013, LASD's practice was "to provide assurances to these references that their names and comments will be held in strict confidence."

In July 2013 two LASD deputies who had worked for OPS received telephone calls from a man who identified himself as Robert Faturechi, a reporter for the Los Angeles Times.  Faturechi told one deputy that he had a copy of the deputy's "complete background investigation file," and that he had obtained "several other deputies' background files [] from a source within the Department."  That deputy agreed to meet with Faturechi.  Faturechi asked the second deputy about his disciplinary record when he worked for OPS.  Faturechi told both deputies that he was writing an article for the Times about LASD's hiring of former OPS deputies.

2.     *The Complaint and Application for Injunctive Relief*

On September 10, 2013, the union representing deputy sheriffs in LASD -- the Association for Los Angeles Deputy Sheriffs (ALADS) -- filed a complaint and an

3

ex parte application for a temporary restraining order and order to show cause, seeking preliminary and permanent injunctions. The complaint also listed as plaintiffs "Deputy John Doe[s]" 1-13, "Deputy Jane Doe-1," and "500 Similarly Situated ALADS Members." The complaint named as defendants Robert Faturechi, a Los Angeles Times reporter,[2] and Los Angeles Times Communications LLC.

ALADS alleged a single cause of action entitled: "CAUSE OF ACTION for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction Preventing Release of Confidential Personnel, Education, Medical and Credit Information." ALADS alleged that, in applying for employment with LASD, the former OPS officers were required to provide a substantial amount of confidential and private information. ALADS also alleged that background checks for the applicants involved "interview statements," and that LASD's "practice" was "to promise, and provide, confidentiality to the people making these statements in order to obtain the fullest, most complete, and most candid statements concerning the applicant as possible." ALADS alleged that "[a]t some unknown time prior to August, 2013, Defendant Faturechi stole, received from someone else who stole, or otherwise unlawfully came into physical possession of the confidential background investigation files of Deputy John Doe and approximately 500 other County peace officers who are similarly situated to Deputy Doe." ALADS alleged Faturechi had contacted some of the OPS/LASD deputies to ask them questions.

ALADS prayed for an injunction barring the Times from "[r]eleasing or publishing, in print, on line, or in any other media or format, to the public" any information "obtained from or contained in the background investigation files," including the deputies' names, photographs, and "[a]ny non-public criminal history." ALADS also sought a court order requiring the Times "to immediately return" to

---

[2]    ALADS never served Faturechi with the summons and complaint, and he never appeared in the action.

4

LASD[3] "each and every copy of every Sheriff's Department background investigation file [that] were [*sic*] unlawfully obtained by Defendants [*sic*] Faturechi."

A hearing on ALADS' ex parte application for a temporary restraining order and order to show cause apparently was held on September 10, 2013, in a writs department.[4] The trial court denied ALADS' application. The court noted the Doe declarations ALADS submitted "contain no personal details about the declarants that would relieve them of the obligation of identifying themselves, particularly when the declarations contain the hearsay statement of defendant Faturechi concerning when the article is going to be published and what it will contain -- the evidence most critical to the showing of irreparable harm or immediate danger that plaintiff must make to justify ex parte relief." The court also observed, "The declarations are also very vague in their reference to the personal information that Faturechi told the declarants he would be publishing." The court "decline[d] to issue a TRO imposing a prior restraint on defendants' free speech based on the speculative hearsay testimony of anonymous witnesses."

The court denied the application on the additional ground that ALADS -- by its own admission -- had known for weeks if not months that the Times had information from the OPS/LASD deputies' files, that notwithstanding this knowledge it had not proceeded by noticed motion, and therefore that "any exigency appear[ed] to be of [ALADS'] own making . . . ."

3.    *The Times' Anti-SLAPP Motion and the Trial Court's Ruling*

The case was assigned to a calendar and trial court. The Times filed an anti-SLAPP motion, arguing that the injunction ALADS sought would be an unconstitutional prior restraint. ALADS filed opposition. ALADS argued that the court should delay ruling on the motion until it could depose Faturechi, that the SLAPP

---

[3]    The Los Angeles County Sheriff's Department has never been a party to this action.

[4]    ALADS has not submitted a reporter's transcript of that proceeding.

statute did not apply because Faturechi's possession of the files was "illegal as a matter of law," that ALADS had shown a probability of prevailing on its claim, and that the injunctive relief it sought was not a prior restraint because it was not "content-based." ALADS submitted declarations from two deputy sheriffs doing background checks in the personnel bureau, two deputy sheriffs identified only as John Does 3 and 14,[5] a man who owns a company that helps "law enforcement officers and their families in removing private and personal information from the Internet," and a sergeant who was "investigat[ing] the theft" of the files. The Times filed evidentiary objections to parts of the declarations.

The trial court held a hearing on the special motion to strike on October 9, 2013. The court sustained many of the Times' evidentiary objections to ALADS' declarations and overruled others. At the conclusion of the hearing the court granted the motion. The court first noted that the SLAPP statute generally stays discovery absent a noticed motion showing good cause. The court agreed with the Times that "the qualifications, conduct, and identities of peace officers are matters of public interest," citing *Gomes v. Fried* (1982) 136 Cal.App.3d 924, 933 ("law enforcement is a primary function of local government" and the public has a great "interest in the qualifications and conduct of law enforcement officers"). The trial court also stated that ALADS had not "provide[d] any evidence that Faturechi's possession or acquisition of the background investigations is illegal/criminal." The court observed the cases ALADS cited were distinguishable: "they were situations where illegality was either conceded by the Defendant or where Plaintiffs' evidence established illegal conduct." The court acknowledged the "wealth of both State and Federal case law" finding First Amendment protection for journalists who "did not [themselves] engage in the illegal conduct but had reason to know the information they had received had been obtained illegally in the first instance."

As for the probability of success on the merits, the trial court stated ALADS had "not adequately alleged any underlying privacy cause of action," instead pleading only

---

[5]     The complaint does not list as a plaintiff a John Doe 14.

"a single cause of action seeking injunctive relief." The court observed ALADS had "not provided any admissible evidence identifying what, if any, confidential documents [the Times] has i[n] its possession." The court concluded the injunction ALADS sought would be "a prior restraint of speech." As for ALADS' request for a court order requiring the Times and Faturechi to turn files over to LASD, the court stated ALADS had not alleged any "separate cause of action for conversion or any comparable claim" nor had it or the Doe plaintiffs "identified their ownership rights to [the] property." Finally, with respect to ALADS' delay, the trial court cited evidence the Times had submitted showing the Times "began reporting on the Sheriff's Department's deficiencies in hiring" in October 2012.

ALADS timely appealed.[6]

## APPELLANTS' CONTENTIONS

ALADS contends the Times is not entitled to invoke the anti-SLAPP statute because its possession of the deputies' "confidential personnel files" is "clearly illegal." ALADS also asserts the trial court erred in sustaining evidentiary objections to parts of the declarations ALADS submitted. ALADS argues that, even though it termed its cause of action "one for injunctive relief," its factual allegations add up to a claim for invasion of the "primary right of privacy." Finally, ALADS contends -- as it did in the trial court -- that the injunction it seeks is not a prior restraint because it is not "content-based."

## DISCUSSION

We review the trial court's evidentiary rulings for abuse of discretion. (*Molenda v. Department of Motor Vehicles* (2009) 172 Cal.App.4th 974, 986.) We review the court's grant of the anti-SLAPP motion de novo and independently determine whether

---

[6] The Times states in its brief that it published an article on December 1, 2013, reporting that LASD had hired "dozens" of OPS deputies even though their background investigations "raised serious concerns about dishonesty and misconduct," and that the County Board of Supervisors then asked LASD to investigate. The Times has not complied with rule 8.252, California Rules of Court, governing requests for judicial notice.

7

the parties have met their respective burdens. (*Cross v. Cooper* (2011) 197 Cal.App.4th 357, 371 (*Cross*); *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 (*Soukup*).) We do not weigh credibility or compare the weight of the evidence. (*Cross*, *supra,* 197 Cal.App.4th at p. 371.)

1.    *California's Anti-SLAPP Statute*

In 1992 the Legislature enacted section 425.16 of the Code of Civil Procedure.[7] Under the statute, "[a] defendant may bring a special motion to strike any cause of action 'arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.' " (*Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793, 803 (*Bergstein*).)[8] Courts are to construe the anti-SLAPP statute broadly. (*D.C. v. R.R.* (2010) 182 Cal.App.4th 1190.)

When ruling on an anti-SLAPP motion, the trial court employs a two-step process. It first looks to see whether the moving party has made a threshold showing that the challenged causes of action arise from protected activity. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon*).) If the moving party meets this threshold requirement, the burden then shifts to the other party to demonstrate a probability of prevailing on its claims. (*Ibid.*) "In making these determinations, the trial court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " (*Bergstein, supra,* 236 Cal.App.4th at p. 803 [quoting section 425.16(b)(2)].)

---

**7**      Unless otherwise noted, all statutory references are to the Code of Civil Procedure.

**8**      The statute includes within its definition of acts in furtherance of protected free speech both "written . . . statements made in a place open to the public or a public forum in connection with an issue of public interest" and "any . . . conduct in furtherance of the exercise of the constitutional right of . . . free speech in connection with a public issue or an issue of public interest." (Code Civ. Proc. § 425.16, subd. (e)(3), (4)). ALADS did not dispute in the trial court, nor does it here, that the Times' publishing of news reports falls within these statutory categories.

2. *The Trial Court Correctly Found ALADS' Complaint Arises From The Times' Protected Activity:  News Reporting*

ALADS asserts the trial court erred in finding the Times had met its burden on the first step of the analysis because the Times obtained the LASD files "through criminal means."  ALADS repeats the allegation from its complaint that the Times reporter "stole, received from someone else who stole, or otherwise unlawfully came into physical possession of the confidential background investigation files . . . . "  As the trial court correctly observed, ALADS has presented no admissible evidence that Faturechi or anyone else at the Times stole anything.  For this proposition in its brief, ALADS cites the declaration of Sergeant Jay Moss.  Sergeant Moss states only that he has been "assigned to investigate the theft of up to 500 background investigation files from the Sheriff's Department."  Moss also states that only investigators, supervisors, and command staff are "authorized to possess or review the contents" of the files.

ALADS cites *Flatley v.Mauro* (2006) 39 Cal.4th 299 (*Flatley*).  There, our Supreme Court held that "a defendant whose assertedly protected speech or petitioning activity was illegal as a matter of law, and therefore unprotected by constitutional guarantees of free speech and petition, cannot use the anti-SLAPP statute to strike the plaintiff's complaint." (*Id.* at p. 305.)  The court stated the rule this way:  where "either the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action." (*Id.* at p. 320.)  In *Flatley* a lawyer's letters and telephone calls to the plaintiff "constituted criminal extortion as a matter of law" and so were unprotected. (*Id.* at pp. 305, 332.)  The evidence of the defendant's communications was uncontroverted. (*Id.* at p. 329.)  The Court emphasized its conclusion that the defendant's communications constituted

9

criminal extortion as a matter of law was "based on the specific and extreme circumstances of [that] case."[9] (*Id.* at p. 332, fn. 16.)

Cases decided after *Flatley* have held the *Flatley* rule applies only to criminal conduct, not to conduct that is illegal because it violates statutes (other than criminal statutes) or the common law. (*Bergstein, supra,* 236 Cal.App.4th at p. 804; see also *Mendoza v. ADP Screening & Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1654 ["the Supreme Court's use of the phrase 'illegal' was intended to mean criminal, and not merely violative of a statute"]; *Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153, 1169; *Cross, supra,*197 Cal.App.4th at pp. 384-392 [rejecting plaintiff's claim that defendant's disclosure of location of registered sex offender constituted extortion and violated other Penal Code provisions as a matter of law; anti-SLAPP protection available].)

*Bergstein*, decided very recently by this court, discusses the governing authorities on this point at some length. There, the plaintiffs sued the lawyers who had represented their adversaries in litigation over financial transactions. The lawyer defendants filed an anti-SLAPP motion. In opposition, the plaintiffs argued "their claims did not arise from protected activity" because the defendants had "participated in the theft of confidential and privileged documents and information, and in the unlawful purchase of claims" to force a bankruptcy in violation of federal law. (*Id*. at p. 802.) The plaintiffs submitted more than 2,000 pages of documents, including e-mails among the lawyers and others. The trial court granted the motion and the court of appeal affirmed. The court discussed *Flatley, Mendoza,* and many other cases, concluding the illegality exception applies to

---

[9]      See also *Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1366-1367 (*Paul*), disapproved on another point in *Equilon, supra,* 29 Cal.4th at p. 68, fn. 5 [defendant's conceded illegal money laundering, although arguably political conduct, was not protected activity and not subject to special motion to strike]; *Novartis Vaccines & Diagnostics, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2006) 143 Cal.App.4th 1284, 1300 [individual activists' terrifying "home visits" of plaintiffs' employees -- in which their windows were broken and cars vandalized -- were illegal activities as a matter of law.].

statutory violations that constitute criminal conduct and that, in any event, the record did not establish the defendants' conduct was illegal as a matter of law.

ALADS cites -- and miscites -- various statutes it contends are violated by Faturechi's mere possession of the records. For example, ALADS asserts that section 6200 of the Government Code makes it a crime for "any person" to steal, remove, or secrete "official government documents." But the statute does not say "any person." It says "[e]very *officer*" who has custody of a record "deposited in any public office" shall not steal, remove, secrete, destroy, mutilate, deface, alter, or falsify the record or permit another person to do so. The section is entitled "Custodial officers; theft, destruction, alteration, falsification." Similarly, ALADS claims Government Code section 3307.5 "makes it illegal, as a matter of law, for anyone" to release a photograph of a peace officer to the public. In fact, that statute concerns officers' relationships with the agencies that employ them. It says officers shall not be "required as a condition of employment" to consent to the use of their photographs on the Internet.

ALADS also seems to assert that the Times' possession of the files constitutes the crime of receiving stolen property in violation of Penal Code section 496, subdivision (a). First -- as the trial court noted -- ALADS has presented no evidence[10] that Faturechi or anyone else at the Times "received" the files knowing they were

---

[10] ALADS asserts that the Times "had the burden of proof on this issue." ALADS is mistaken. "[O]nce the defendant has made the required threshold showing that the challenged action arises from assertedly protected activity, the plaintiff may counter by demonstrating that the [defendant's conduct] was illegal as a matter of law because either the defendant concedes the illegality of the assertedly protected activity or the illegality is conclusively established by the evidence presented in connection with the motion to strike." (*Soukup, supra,* 39 Cal.4th at pp. 286-287; see also *Flatley, supra,* 39 Cal.4th at pp. 313-315; *Paul, supra,* 85 Cal.App.4th at p. 1367 [if plaintiff contests validity of defendant's exercise of protected rights and cannot demonstrate as a matter of law that defendant's acts do not fall under anti-SLAPP statute, "then the claimed illegitimacy of the defendant's acts is an issue which the plaintiff must raise *and* support in the context of the discharge of the plaintiff's burden to provide a prima facie showing of the merits of the plaintiff's case" (original italics)].)

"stolen." (See CALCRIM 1750, setting forth the elements of the crime.)[11] Second -- as the trial court noted -- ALADS has not distinguished, and cannot distinguish, the "wealth of both State and Federal case law, discussing the protection journalists and the press enjoy under the First Amendment where there have been allegations that published or disclosed content had been illegally obtained."

A leading California case is *Nicholson v. McClatchy Newspapers* (1986) 177 Cal.App.3d 509. Two newspapers reported that the State Bar's commission had found the plaintiff unqualified for appointment to the bench. The Government Code required that commission ratings remain confidential. The plaintiff sued the newspapers and the State Bar, alleging violation of his right of privacy under the California Constitution and the common law. The plaintiff also alleged the defendants had conspired to disclose the evaluation "to unauthorized persons and for unauthorized purposes." (*Id*. at p. 521.) The trial court sustained the newspapers' demurrers and the court of appeal affirmed. The court observed the "plaintiff had the right to expect the State Bar's negative evaluation would remain confidential and, undoubtedly, someone acted in violation of this law in disclosing the evaluation to the media defendants." (*Id.* at p. 516.) But, the court said, "the First Amendment protects the ordinary news-gathering techniques of reporters and those techniques cannot be stripped of their constitutional shield by calling them tortious." (*Id*. at p. 513.) The court stated that ordinary newsgathering techniques "of course, include asking persons questions, including those with confidential or restricted information." (*Id.* at p. 519.) The court concluded, "While the government may desire to keep some proceedings confidential and may impose the duty upon participants to maintain confidentiality, it may not

---

[11]    As the court also noted, according to ALADS' own allegations, the files belong to LASD, not the individual deputies or their union.

12

impose criminal or civil liability upon the press for obtaining and publishing newsworthy information through routine reporting techniques." (*Id.* at pp. 519-520.)[12]

Many other cases have reached the same result. (See, e.g., *Bartnicki v. Vopper* (2001) 532 U.S. 514, 517, 535 [First Amendment protected journalists who reported contents of illegally-intercepted telephone conversations even though they knew "or at least had reason to know" the interceptions were unlawful; contentious collective bargaining negotiations between school board and union were matters of public concern]; *Landmark Communications, Inc. v. Virginia* (1978) 435 U.S. 829 [First Amendment protected newspaper from criminal conviction for publishing confidential proceedings of judicial review commission]. Cf. *Cox Broadcasting Corp. v. Cohn* (1975) 420 U.S. 469 [First Amendment protected reporter who published rape victim's name in violation of state criminal statute]; *Smith v. Daily Mail Publishing Co.* (1979) 443 U.S. 97 [invalidating state law that criminalized publication of juvenile murder suspect's name without court permission]; *Florida Star v. B.J.F.* (1989) 491 U.S. 524 [First Amendment protected newspaper that published rape victim's name -- inadvertently released by police -- in violation of state criminal statute].)

---

[12]    ALADS cites *Shulman v. Group W Productions, Inc.* (1998) 18 Cal.4th 200 for the proposition that the Times "has no constitutional protection for unlawful news gathering [sic] activities." In *Shulman*, a television cameraman recorded footage, including audio, of an accident victim on the highway and inside a medevac helicopter. A production company later broadcast the footage as part of a television reality show. The Supreme Court held that the plaintiff victim could not sue for public disclosure of private facts because the subject of the broadcast was newsworthy. But, the Court said, triable issues of fact precluded summary judgment for the production company on the victim's intrusion claim for the recording and broadcast of footage inside the helicopter. The Court held the cameraman's videotaping at the accident scene on the highway was not actionable. But the inside of the medevac helicopter was essentially an ambulance, and the victim "was entitled to a degree of privacy in her conversations" with the nurse on board. (*Id.* at p. 233.) There is no allegation here that the Times sent anyone into any of the deputies' hospital rooms or eavesdropped on any conversation with any medical provider. Nor did *Shulman* involve a request for an injunction barring publication. The footage in *Shulman* already had been broadcast.

13

For all of these reasons, the trial court correctly found the "illegal conduct" exception to the anti-SLAPP statute inapplicable in this case.

3. *The Trial Court Correctly Found the Injunction ALADS Sought Would Be an Unconstitutional Prior Restraint*

ALADS contends that -- even if its complaint arises from protected activity and the Times was entitled to bring an anti-SLAPP motion -- the complaint adequately alleged a cause of action for invasion of privacy and the injunction for which it prayed was not a prior restraint.

As noted above, ALADS' complaint alleged a single cause of action for injunctive relief. That cause of action alleges that the Times intends to "release to the public confidential information from peace officer personnel files, including but not limited to private, confidential and legally privileged and protected personnel, education, credit and medical information"; that the Times is "precluded by law" from "releasing any confidential information" from the files; that the individual plaintiffs "have no adequate, speedy remedy at law"; and that they will suffer irreparable harm if the court does not enjoin the Times' "illegal publication" of their "confidential information." ALADS argues that these allegations -- taken together with all of the factual allegations of its complaint -- "assert harm suffered by the invasion of their right of privacy."

ALADS seems not to claim that it has stated a cause of action for any of the four common law privacy torts.[13] Instead, ALADS appears to contend that its complaint stated "a cause of action for invasion of privacy in violation of article I, section 1 of the California Constitution." "An actionable claim requires three essential elements: (1) the claimant must possess a legally protected privacy interest [citation]; (2) the claimant's expectation of privacy must be objectively reasonable [citation]; and (3) the invasion of privacy complained of must be serious in both its nature and scope [citation]. If the

---

[13] These are public disclosure of private facts, false light, intrusion into private affairs, and appropriation of name and likeness. (5 Witkin, Summary of Cal. Law (10th ed.) Torts, § 651 at p. 957-958.)

14

claimant establishes all three required elements, the strength of that privacy interest is balanced against countervailing interests. [Citation]." (*County of Los Angeles v. Los Angeles County Employee Relations Com.* (2013) 56 Cal.4th 905, 926 [citing *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 35-38].)

The first problem with ALADS' argument is that any privacy right in the information contained in deputies' employment applications belongs to the deputies (and their employer, LASD), not to the deputies' labor union. "It is well settled that the right of privacy is purely a personal one; it cannot be asserted by anyone other than the person whose privacy has been invaded, that is, plaintiff must plead and prove that *his* privacy has been invaded." (*Hendrickson v. California Newspapers, Inc.* (1975) 48 Cal.App.3d 59, 62 [emphasis the court's][family members could not bring privacy suit against newspaper that published obituary revealing decedent's criminal conviction]. Cf. *Roberts v. Gulf Oil Corp.* (1983) 147 Cal.App.3d 770, 790-793 [California's "constitutional [privacy] provision simply does not apply to corporations. The provision protects the privacy rights of *people*." (Emphasis the court's)].) As the only cause of action even arguably pleaded in the complaint is invasion of privacy under the California Constitution, ALADS has no standing to prosecute this case.

In any event, we need not determine whether the complaint as pleaded adequately alleges a cause of action by the individual unnamed Doe plaintiffs for invasion of privacy under the California Constitution, because the injunction the plaintiffs seek would be an unconstitutional prior restraint. The seminal case, of course, is the Pentagon Papers case, *New York Times Co. v. United States* (1971) 403 U.S. 713. There, the United States sought to enjoin the New York Times and the Washington Post from publishing the contents of a classified study about the Vietnam conflict. (*Id.* at p. 714.) As Chief Justice Burger observed in a later case, in *New York Times* "[e]ach of the six concurring Justices and the three dissenting Justices expressed his views separately, but 'every member of the Court, tacitly or explicitly, accepted the *Near [v. Minnesota* (1931) 283 U.S. 697 (*Near*)] and [*Organization for a Better Austin v.] Keefe* [(1971) 402 U.S. 415 (*Keefe*)] condemnation of prior restraint as presumptively

15

*unconstitutional.*' [Citation.]" (*Nebraska Press, supra,* 427 U.S. at p. 558.)  Justice White noted that the United States Criminal Code contained "numerous provisions" that the newspapers might violate if they published -- for example -- classified information about communication intelligence activities.  Justice White cited a provision of the Criminal Code that made it "a criminal act for any unauthorized possessor of a document 'relating to the national defense' " to "communicate" it to any unauthorized person or to retain it.  (*New York Times, supra,* 403 U.S. at p. 737.)  Justice White stated, "[T]he newspapers are presumably now on full notice of the position of the United States and must face the consequences if they publish."  (*Id.* at pp. 736-737.)  Nevertheless, Justice White joined in the Court's decision "because of the concededly extraordinary protection against prior restraints enjoyed by the press under our constitutional system."  (*Id.* at pp. 730-731.)  Other justices spoke more forcefully. Justice Black quoted Founding Father James Madison:  "The people shall not be deprived or abridged of their right to speak, to write, or to publish their sentiments; and the freedom of the press, as one of the great bulwarks of liberty, shall be inviolable." (*Id.* at p. 716.)  Justice Brennan added, "So far as I can determine, never before has the United States sought to enjoin a newspaper from publishing information in its possession."  (*Id.* at p. 725.)

The cases invalidating prior restraints -- especially restraints on publication by the press -- are legion.  (See, e.g., *Nebraska Press, supra,* 427 U.S. 539 [invalidating restriction on reporting about criminal defendant's confession even though report might jeopardize defendant's Sixth Amendment rights]; *Near, supra,* 283 U.S. at pp. 718-719 & fn. 11 ["The fact that for approximately one hundred and fifty years there has been almost an entire absence of attempts to impose previous restraints upon publications relating to the malfeasance of public officers is significant of the deep-seated convictions that such restraints would violate constitutional right"]; *Keefe, supra,* 402 U.S. at p. 418 [invalidating court order that enjoined community organization from distributing leaflets that plaintiff claimed violated his privacy; "[i]t is elementary, of course, that in a case of this kind the courts do not concern themselves with the truth or

16

validity of the publication"]; *Vance v. Universal Amusement Co., Inc.* (1980) 445 U.S. 308 [public nuisance statute that authorized state judge to enjoin exhibition of obscene films was unconstitutional prior restraint]; *In re Providence Journal Co.* (1986) 820 F.2d 1342 (*Providence Journal*) [court order that newspaper not publish report based on illegal FBI surveillance, in violation of privacy rights, was invalid prior restraint].) The California Constitution " 'provides an even broader guarantee of the right of free speech and the press than does the First Amendment. [Citation.]' " (*Freedom Communications, Inc. v. Superior Court* (2008) 167 Cal.App.4th 150, 154.)

ALADS contends the injunction it seeks to prevent the Times from publishing is "content neutral" and therefore not a prior restraint. ALADS also argues an injunction restraining speech "may issue in some circumstances to protect private rights."[14] None of the cases ALADS cites involved an injunction barring the press from reporting or publishing news articles. (See *Madsen v. Women's Health Center, Inc.* (1994) 512 U.S. 753 [upholding court order that enjoined protesters from entering buffer zone around abortion clinic and from assaulting patients, but striking down as unconstitutional portion of injunction that prohibited protesters from displaying images to patients]; *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 138 [upholding injunction that barred Latino employees' manager from verbally and physically harassing them -- for example, from calling them "motherfuckers" -- because jury already had found that manager's conduct constituted employment discrimination; injunction "simply precluded defendants from continuing their unlawful activity"]; *Pittsburgh Press v. Pittsburgh Com. on Human Relations* (1973) 413 U.S. 376, 388, 391

---

[14]    ALADS takes this phrase from *Wilson v. Superior Court* (1975) 13 Cal.3d 652, 662. In *Wilson* the California Supreme Court unanimously held unconstitutional, as a prior restraint, a court order that enjoined a candidate from distributing a libelous newsletter about his opponent. Justice Mosk, writing for the court, discussed all of the United States Supreme Court cases including the then-recent Pentagon Papers case. Following the phrase on which ALADS relies, the court cited *Magill Bros. v. Bldg. Service Etc. Union* (1942) 20 Cal.2d 506, 511-512. In *Magill* the Court held a bowling alley was entitled after trial to an injunction barring a union that sought to represent its employees from picketing in front of the bowling alley.

17

[city ordinance forbidding newspapers from listing help-wanted ads by gender was not unconstitutional; discrimination in employment is illegal commercial activity; Court's decision does not "authorize any restriction whatever . . . on stories or commentary originated by Pittsburgh Press"; Court "reaffirm[s] unequivocally the protection afforded to editorial judgment and to the free expression of views on these and other issues, however controversial"]; *Planned Parenthood Shasta-Diablo, Inc. v. Williams* (1995) 10 Cal.4th 1009 [affirming injunction after trial that kept abortion protesters from blocking entrance to clinic; "place restriction" that required demonstrating to take place across the street on public sidewalk was content-neutral]; *DVD Copy Control Assn. v. Bunner* (2003) 31 Cal.4th 864, 871 [upholding injunction that issued to prevent defendant's ongoing misappropriation of digital "master keys" and algorithms that were plaintiff's trade secrets].)

Moreover, the injunction ALADS seeks would not be "content-neutral" at all. ALADS asks the court to enjoin the Times from publishing any article containing any information in 16 listed categories, including the names of any OPS/LASD deputies, their photographs, and their "non-public criminal history."

In sum, ALADS has cited no case permitting the kind of injunction it seeks here, to restrain a newspaper from publishing news articles on a matter of public concern: the qualifications of applicants for jobs as law enforcement officers. ALADS has cited no case because there is no such case. For more than one hundred years, federal and state courts have refused to allow the subjects of potential news reports to stop journalists from publishing reports about them. (*Providence Journal, supra,* 820 F.2d at pp. 1348-1349 ["In its nearly two centuries of existence, the Supreme Court has never upheld a prior restraint on pure speech"; the Supreme Court has never upheld a prior restraint on the publication of news].) If and when the Times publishes any article that constitutes actionable libel or invasion of privacy about any individual deputy, that deputy remains free to file any lawsuit he or she can plead and prove in good faith. (*Id*. at pp. 1345, 1349 [that publication would infringe privacy rights is insufficient basis for issuing prior restraint; remedy is subsequent action for damages].)

18

4.     *ALADS Has Not Shown the Trial Court Abused its Discretion in
       Ruling on the Times' Objections to ALADS' Declarations*

Finally, ALADS contends the trial court "erred in its evidentiary rulings." We
find no abuse of discretion.

Under the abuse of discretion standard of review, appellate courts will disturb
discretionary trial court rulings only upon a showing of "a clear case of abuse" and
"a miscarriage of justice." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 331; *Denham v.
Superior Court* (1970) 2 Cal.3d 557, 566.) A trial court abuses its discretion only when
it "exceeds the bounds of reason, all of the circumstances before it being considered."
(*Id.* at p. 566; see also *Sargon Enterprises, Inc. v. University of Southern California*
(2012) 55 Cal.4th 747, 773.)

Substantial portions of the ALADS declarations were admitted into evidence on
the anti-SLAPP motion, either because the Times did not object to them or because the
trial court overruled the Times' objections. This admitted evidence includes:

-- Descriptions by a lieutenant and a sergeant in the LASD personnel bureau of
what information applicants are required to provide, how extensive that information is,
how background checks are conducted, what kinds of questions references are asked,
the fact that LASD tells applicants as well as references that LASD will keep what they
say in confidence, and the fact that the personnel bureau has not authorized anyone to
give the files to anyone outside the bureau. (Declaration of Milton Murphy,
paragraphs 1-7, 10; Declaration of Cynthia McDaniel, paragraphs 1-3, second sentence
of paragraph 4, 5, 6, first and third sentences of paragraph 7, 12.)

-- Statements by two Doe plaintiffs that they provided extensive personal
information to LASD on their application forms. One of the two said when he applied
he "underst[ood]" LASD would maintain his "information" as "confidential."
(Declaration of Deputy John Doe-3, paragraphs 1-5; Declaration of John Doe-14,
paragraphs 1, 3-6.)

-- Statements by a police officer -- who also owns a company that
"assist[s] . . . law enforcement personnel in protecting their private information on the

19

internet" -- that gang members and "[c]areer criminals" take pride in shooting and killing police officers. (Declaration of Kevin Shaw, paragraphs 1-7.)

-- Statements by an LASD sergeant that he is investigating "the theft of up to 500 background investigation files" from LASD. (Declaration of Jay Moss, paragraphs 1-8.)

The trial court also sustained a number of the Times' objections to ALADS' declarations. Some of the statements not admitted into evidence include:

-- Legal conclusions. (See, e.g., McDaniels Decl. second sentence of paragraph 7; Moss Decl. paragraphs 10, 11.)

-- Hearsay and statements lacking foundation. (See, e.g., Doe-3 Decl. paragraph 15; Shaw Decl. paragraphs 9-15; Declaration of Elizabeth J. Gibbons, paragraphs 7, 9-15.)

-- Statements purporting to testify to Faturechi's intent. (Doe-3 Decl. paragraph 14.)

-- Improper lay opinion[15] or conclusions. (See, e.g., Murphy Decl. paragraphs 8, 9; McDaniel Decl. paragraph 11, fourth sentence; Doe-3 Decl. paragraphs 17, 19; Doe-14 Decl. paragraph 20.)

-- Some of Shaw's statements about crimes committed in other jurisdictions against peace officers. . (Cf. *Long Beach Police Officers Assn. v. City of Long Beach* (2014) 59 Cal.4th 59, 65, 75 (*LBPOA*) [declaration by police department lieutenant that revelation of officers' names could expose officers and their families to harassment and gang retaliation expressed "concerns" only "general in nature"].)

The trial court sustained some objections to the ALADS' witnesses' statements about what Faturechi had said to them and what they had said to him, and overruled others. (Compare Doe-3 Decl. paragraphs 11, 13, 14, 14 [sic]; Doe-14 Decl.

---

[15] ALADS asserts that Lieutenant Murphy, Sergeant McDaniel, and the man identified only as "Deputy John Doe-3" are experts. ALADS did not make this argument in the trial court. Therefore, it has waived it. (*Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 767; *Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3.)

paragraphs 9-10 with Doe-3 Decl. paragraphs 7-9; Doe-14 Decl. paragraphs 11, 14.) While both Doe-3 and Doe-14 could testify as to what they put in their applications for LASD jobs, they could not testify as to what documents and information Faturechi had or did not have, as the trial court correctly ruled.

We have reviewed each of the 54 objections the trial court sustained as well as each of the 15 it overruled. We have found no abuse of discretion.

## *DISPOSITION*

Law enforcement officers protect the public.  They prevent crime, and they investigate and make arrests when crimes occur.  They carry and use firearms and other weapons.  They are authorized to use deadly force and to restrain individual liberty.  The public has a strong interest in the qualifications and conduct of law enforcement officers.  " 'Peace officers "hold one of the most powerful positions in our society; our dependence on them is high and the potential for abuse of power is far from insignificant." ' " (*LBPOA, supra,* 59 Cal.4th at p. 73 [quoting *City of Hemet v. Superior Court* (1995) 37 Cal.App.4th 1411, 1428].)  Here, a labor union and unnamed officers seek to stop a newspaper from publishing news reports about the hiring and evaluation of officers, including allegations of past misconduct.  "Of all the constitutional imperatives protecting a free press under the First Amendment, the most significant is the restriction against prior restraint upon publication." (*Providence Journal, supra,* 820 F.2d at p. 1345.)  The trial court properly granted the Times' anti-SLAPP motion.  We affirm the order.  Respondents are entitled to recover their costs on appeal.


EGERTON, J.[*]

WE CONCUR:


KITCHING, Acting P. J.                          ALDRICH, J.

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*CERTIFIED FOR PUBLICATION*


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| ASSOCIATION FOR LOS ANGELES DEPUTY SHERIFFS, <br><br>     Plaintiffs and Appellants, <br><br>     v. <br><br> LOS ANGELES TIMES COMMUNICATIONS LLC et al., <br><br>     Defendant and Respondent. | B253083 <br><br> (Los Angeles County <br> Super. Ct. No. BC520745) <br><br><br> ORDER CERTIFYING OPINION <br> FOR PUBLICATION <br> [NO CHANGE IN JUDGMENT] |


THE COURT:

The opinion in the above-entitled matter filed on July 21, 2015, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

[There is no change in the judgment.]