*64 Opinion
KENNARD, J.*
A newspaper asked a city to release the names of police officers involved in certain shootings while on duty. The police union then sought injunctive relief against the city in superior court, attempting to prevent release of the names. The newspaper intervened (seeking disclosure of the names), and the city then aligned itself with the union (opposing disclosure). The trial court denied the union’s request for a permanent injunction; that denial was upheld on appeal. We granted the separate petitions for review filed by the city and the union. We now affirm the judgment of the Court of Appeal.
I
Shortly before 5:00 p.m., on December 12, 2010, two City of Long Beach police officers responded to a resident’s telephone call about an intoxicated man brandishing a “six-shooter” on neighboring property. At the sight of the two officers, the man (35-year-old Douglas Zerby) pointed at them an object resembling a gun. The officers immediately fired multiple rounds at Zerby, killing him. It turned out that the object Zerby was holding was a garden hose spray nozzle with a pistol grip.
Three days later, reporter Richard Winton of Los Angeles Times Communications LLC (the Times), asked the Long Beach City Attorney’s Office for “[t]he names of Long Beach police officers involved in the December 12[, 2010,] office[r-]involved shooting in the 5300 block of East Ocean Boulevard” (the Zerby shooting), as well as “[t]he names of Long Beach police officers involved in officer[-]involved shootings from Jan[uary] ![,] 2005 to Dec[ember] 11, 2010” (the nearly six-year period leading up to the Zerby shooting). The request was made under the California Public Records Act (Gov. Code, § 6250 et seq.).
On December 30, 2010, plaintiff Long Beach Police Officers Association (the Union), the bargaining agent for all Long Beach police officers, sought injunctive relief in the superior court. Named as defendants were the City of Long Beach, the Long Beach Police Department, and its chief of police (collectively, the City). In its complaint, the Union asserted that the City had informed it that, unless prohibited by a court, the City would disclose the information sought by the Times. Accompanying the Union’s request for injunctive relief was a declaration by Lieutenant Steve James, the Union’s president, expressing concern that release of the officers’ names could result *65 in “threats against the well being of officers or their families,” as occurred in one recent police shooting case in which release of an officer’s name led to “death threats” against the officer. James also mentioned an anonymous post on an Internet Web site, wishing that the children of an officer involved in a particular police shooting would experience Christmas without their father. James asserted that the Internet offers broad access to personal information, using only a person’s name as an Internet search term.
The superior court issued a temporary restraining order prohibiting the City from disclosing to the Times the names of the officers involved in the Zerby shooting. The court then continued the case to a later date to determine whether to issue a preliminary or permanent injunction, and it allowed the Times to intervene in the action.
Defendant City supported plaintiff Union’s request for injunctive relief. The City asserted that the names of the two officers involved in the December 2010 fatal shooting of Zerby were exempt from disclosure under the California Public Records Act. With respect to the names of the City’s police officers involved in earlier shootings, the City asserted that those names, too, were likely subject to the same statutory exemptions but that its practice was to evaluate each disclosure request on a “case-by-case basis.”
The City submitted a declaration by Long Beach Police Lieutenant Lloyd Cox, who was in charge of “the criminal and administrative investigations related to all Officer Involved Shootings.” The declaration stated that the police department conducts an administrative investigation of every officer-involved shooting, and, if warranted, an internal criminal investigation follows. Documents resulting from these investigations are treated by the police department as personnel records that are statutorily exempt from disclosure. Cox’s declaration also stated that revealing the name of an officer involved in a shooting could expose the officer and the officer’s family to harassment, because the officer’s home address and other personal information could easily be found using the Internet. The declaration further stated that when, for example, an officer is involved in a shooting of a gang member, it is not uncommon for the gang to retaliate against the officer. Cox mentioned eight “Officer Safety Bulletins . . . about potential retaliation/threats against officers,” two of which were related to shootings, and he also described graffiti in the City of Long Beach that read “Strike Kill a Cop.”
In arguing against disclosure of the names of the officers involved in the Zerby shooting, the Union and the City cited Government Code section 6255, subdivision (a), which authorizes denial of a public records request when “the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record.” The Union and the City *66 argued that the public interest in preventing harassment, threats, or violence against officers and their families outweighed any benefit the public would gain from disclosure.
The Times moved to strike Lieutenant James’s declaration (filed by the Union), but the Times did not object to the declaration of Lieutenant Cox (filed by the City).[1] The trial court struck those portions of the James declaration that mentioned (1) the general safety concerns associated with releasing the names of officers involved in shootings, (2) the death threats made against specific officers involved in past shootings, and (3) the ease with which a name can be used to gather personal information over the Internet. The trial court then denied the Union’s request for a preliminary or permanent injunction, and it discharged the temporary restraining order. The court ruled that none of the disclosure exemptions in the California Public Records Act protected the names of officers involved in shootings. With respect to the potential harassment facing those officers and their families, the court considered such harassment to be speculative in the absence of a particularized showing regarding a specific officer. Recognizing that such a showing might be made in the future, the superior court denied injunctive relief “without prejudice” to a renewed request demonstrating that “releasing the names of particular officers will create a likelihood of harm.”
The Union and the City appealed, without success. We then granted their petitions for review.[2]
II
A. Statutory Law
The California Legislature in 1968, recognizing that “access to information concerning the conduct of the people’s business is a fundamental and *67 necessary right of every person in this state” (Gov. Code, § 6250), enacted the California Public Records Act, which grants access to public records held by state and local agencies (Gov. Code, § 6253, subd. (a)). The act broadly defines “ ‘[p]ublic records’ ” as including “any writing containing information relating to the conduct of the public’s business prepared, owned, used, or retained by any state or local agency . . . .” (Gov. Code, § 6252, subd. (e).) The act has certain specific exemptions (Gov. Code, §§ 6254 — 6254.30), but a public entity claiming an exemption must show that the requested information falls within the exemption (id., § 6255, subd. (a)).
Government Code section 6255’s subdivision (a) contains a “catchall exemption.” (Michaelis, Montanari & Johnson v. Superior Court (2006) 38 Cal.4th 1065, 1071 [44 Cal.Rptr.3d 663, 136 P.3d 194].) It allows a public agency to “justify withholding any record by demonstrating that ... on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record.” (Gov. Code, § 6255, subd. (a).) As we have said in the past, “this provision contemplates a case-by-case balancing process, with the burden of proof on the proponent of nondisclosure to demonstrate a clear overbalance on the side of confidentiality.” (Michaelis, Montanari & Johnson, supra, at p. 1071.)
Also relevant here is Government Code section 6254, subdivision (c), which protects “[personnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy.” But the Union and the City place their greatest reliance on Government Code section 6254, subdivision (k). That provision protects “[r]ecords, the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege.” (Ibid.) Succinctly put, subdivision (k) “ ‘incorporates other [disclosure] prohibitions established by law.’ ” (Copley Press, Inc. v. Superior Court (2006) 39 Cal.4th 1272, 1283 [48 Cal.Rptr.3d 183, 141 P.3d 288] (Copley), quoting CBS, Inc. v. Block (1986) 42 Cal.3d 646, 656 [230 Cal.Rptr. 362, 725 P.2d 470].) The “prohibitions” pertinent here are those set forth in a set of discovery statutes that the Legislature enacted in 1978 in response to our 1974 decision in Pitchess v. Superior Court (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305] (Pitchess).
In Pitchess, a defendant charged with battery on four sheriff’s deputies (Pen. Code, §§ 242, 243, subd. (b)) claimed he was defending himself against the deputies’ use of excessive force. We held that defendants in similar situations had a right, albeit limited, to discover from a peace officer’s employer the existence of any previous complaints about the officer’s use of excessive force. (Pitchess, supra, 11 Cal.3d at pp. 537-538.) In response to our *68 decision, the Legislature enacted several statutes, which we hereafter refer to as the “Pitchess statutes” and which we summarize below.
Under the Pitchess statutes, a public entity that employs peace officers must investigate and retain citizen complaints of any officer misconduct, such as the use of excessive force. (Pen. Code, § 832.5.) Litigants, upon a showing of good cause, are given limited access to records of such complaints and investigations (Evid. Code, §§ 1043, 1045), but such records are otherwise “confidential” and may “not be disclosed” (Pen. Code, §§ 832.7, subd. (a), 832.8, subd. (e)). Also protected as “confidential” are “[p]eace officer . . . personnel records” and “information obtained from these records.” (Id,., § 832.7, subd. (a).) Such “personnel records” include an officer’s personal and family information, medical history, and election of benefits (id., § 832.8, subds. (a), (b) & (c)), as well as matters related to the officer’s “advancement, appraisal, or discipline” (id., subd. (d)). In addition, confidentiality applies to any information that “would constitute an unwarranted invasion of [a peace officer’s] personal privacy.” (Id., § 832.8, subd. (f).)
One other piece of legislation merits mention here. In 2004, California’s voters passed an initiative measure that added to the state Constitution a provision directing the courts to broadly construe statutes that grant public access to government information and to narrowly construe statutes that limit such access. (Cal. Const., art. I, § 3, subd. (b)(2).) That provision, however, does not affect the construction of any statute “to the extent ... it protects [the] right to privacy, including any statutory procedures governing discovery or disclosure of information concerning the official performance or professional qualifications of a peace officer.” (Cal. Const., art. I, § 3, subd. (b)(3).) Thus, by its express terms, the constitutional provision excludes from the requirement of narrow construction those statutes that protect the privacy interests of peace officers, including Government Code section 6254’s subdivision (c) and the Pitchess statutes, both of which are at issue here.
B. Decisional Law
Relevant here are two of this court’s recent decisions, which considered the interplay between the Pitchess statutes and requests under the California Public Records Act for disclosure of peace officers’ names.
In Copley, supra, 39 Cal.4th 1272 (decided in 2006), a newspaper publisher sought access to a civil service commission’s records of an administrative appeal brought by a county sheriff’s deputy who had been terminated for disciplinary reasons. After the commission denied the request, the publisher unsuccessfully petitioned the superior court for a writ of mandate, seeking to compel disclosure. The publisher then appealed, and the Court of Appeal *69 directed the civil service commission to give the publisher access to the records, and also to disclose the deputy’s name. The Court of Appeal reasoned that because the Pitchess statutes define “personnel records” as any file maintained under the officer’s name by the officer’s employing agency (Pen. Code, § 832.8) and because the civil service commission was not the officer’s employing agency, the civil service commission’s records did not qualify as “personnel records” protected by the Pitchess statutes. At the request of two police unions that had intervened in the action, we granted review and, with one justice dissenting, reversed the Court of Appeal.
Copley held that the civil service commission’s records of the deputy’s appeal were confidential “personnel records” under the Pitchess statutes (Pen. Code, §§ 832.7, 832.8) and therefore exempt from disclosure. (Copley, supra, 39 Cal.4th at pp. 1286-1296.) Copley explained that neither the language nor the legislative history of the Pitchess statutes suggested that a peace officer’s privacy rights should have less protection simply because the officer’s employer uses an outside agency like the civil service commission to conduct its administrative appeals. (Copley, at p. 1295.) Copley also rejected the Court of Appeal’s conclusion that the name of the officer who brought the appeal had to be disclosed, noting that the Pitchess statutes were “designed to protect, among other things, ‘the identity of officers’ subject to [citizen] complaints.” (Copley, at p. 1297, quoting Pen. Code, § 832.7, subd. (a); see Copley, at p. 1297, quoting Pen. Code, § 832.7, subd. (c).)
Copley then discussed the Court of Appeal’s reliance on an earlier appellate decision, New York Times Co. v. Superior Court (1997) 52 Cal.App.4th 97 [60 Cal.Rptr.2d 410] (New York Times), which broadly declared that the Pitchess statutes do not prevent disclosure of the names of peace officers. (Copley, supra, 39 Cal.4th at pp. 1297-1298.) That categorical statement was made, we said, “[w]ithout any analysis,” and was “simply incorrect, at least insofar as it applies to disciplinary matters like the one at issue [in Copley].” (Id. at p. 1298.) We disapproved New York Times to the extent that decision conflicted with our analysis in Copley. (Copley, at p. 1298.)
In 2007, just one year after Copley, supra, 39 Cal.4th 1272, we again addressed the issue of a newspaper’s request, made under the California Public Records Act, for disclosure of the names of certain peace officers. In Commission on Peace Officer Standards & Training v. Superior Court (2007) 42 Cal.4th 278 [64 Cal.Rptr.3d 661, 165 P.3d 462] (Commission on Peace Officer Standards), a newspaper sought certain information about peace officers hired statewide by various California public entities during a specified 10-year period. The information was contained in a database maintained by a public agency. When the agency denied the newspaper’s request, the *70 newspaper challenged that decision in superior court, which ordered disclosure of each officer’s name, the appointing agency, the date of new appointment, and, if applicable, the date of termination. The Court of Appeal reversed, but a majority of this court disagreed with the Court of Appeal. (Id. at p. 303.)
In Commission on Peace Officer Standards, the public agency that had compiled the peace officer database did not employ any of the peace officers, and therefore the entries in its database were not “personnel records” under a literal reading of the Pitchess statutes (Pen. Code, § 832.8 [limiting personnel records to records held in files maintained by an individual’s employer]). Nonetheless, a majority of this court concluded that the information in the database would fall within the protections afforded personnel records if the information was “obtained from” personnel records maintained by the employing agencies of the peace officers in question. (Commission on Peace Officer Standards, supra, 42 Cal.4th at p. 289.) The majority further concluded, however, “that peace officer personnel records include only the types of information enumerated in [Penal Code] section 832.8” (id. at p. 293), and because the specific information the trial court ordered disclosed (the names of the officers, their employing agencies, and their employment dates) did not fall into any of the enumerated categories, it was not information obtained from protected personnel records (id., at pp. 294-299), and therefore it was subject to disclosure.
Commission on Peace Officer Standards next held that Government Code section 6254’s subdivision (c), which is part of the California Public Records Act, also did not preclude disclosure of the information covered by the superior court’s order. (See Commission on Peace Officer Standards, supra, 42 Cal.4th at p. 303.) As noted (see p. 67, ante), that statutory provision authorizes denial of a public records request when the information sought consists of “[pjersonnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy.” (Gov. Code, § 6254, subd. (c).) Commission on Peace Officer Standards assumed for purposes of its analysis that the records at issue “may be characterized as ‘[personnel ... or similar files.’ ” (Commission on Peace Officer Standards, at p. 299.) But it noted that the exemption set forth in section 6254’s subdivision (c) requires a balancing of “the privacy interests of peace officers in the information at issue against the public interest in disclosure,” and it further noted that the party opposing disclosure “has the burden” of showing that the records at issue fall within the exemption — a showing the agency failed to make in Commission on Peace Officer Standards. (Commission on Peace Officer Standards, at p. 299.)
Against this background of relevant statutes and court decisions, we now consider the disclosure request of the Times.
*71 III
The Times, citing the California Public Records Act, seeks disclosure of the names of the two Long Beach police officers involved in the December 12, 2010, fatal shooting of Zerby, as well as the names of any Long Beach officers involved in shootings occurring between January 1, 2005, and December 11, 2010. The Union and the City oppose disclosure. They rely largely on the confidentiality protections afforded peace officers under the Pitchess statutes, focusing in particular on Penal Code section 832.7’s subdivision (a) (protecting from disclosure a peace officer’s “personnel records”) and Penal Code section 832.8’s subdivision (d) (defining “personnel records” as including records of employee “appraisal[] or discipline”).
The Union and the City also attach significance to the italicized language in this quote from Commission on Peace Officer Standards: “[T]he legislative concern [in adopting sections 832.7 and 832.8] appears to have been with linking a named officer to the private or sensitive information listed in section 832.8. ... It seems unlikely that the Legislature contemplated that the identification of an individual as a peace officer, unconnected to any of the information it defined as part of a personnel record, would be rendered confidential by section 832.8.” (Commission on Peace Officer Standards, supra, 42 Cal.4th at p. 295, italics added.) The Union and the City contend that disclosing the names of officers involved in on-duty shootings necessarily links the named officers to private or sensitive information in their personnel files, information made confidential under Penal Code section 832.7’s subdivision (a). The Union and the City reason that because every on-duty shooting is routinely investigated by the employing agency, the details of every such incident (including the names of the officers involved) are “records relating to” officer “appraisal[] or discipline” (Pen. Code, § 832.8, subd. (d)), which, by definition, are confidential “personnel records” (id., § 832.8). We are not persuaded.
Although the Pitchess statutes limit public access to personnel records (Pen. Code, § 832.7, subd. (a)), including officer names if they are linked to information in personnel records (Commission on Peace Officer Standards, supra, 42 Cal.4th at p. 295), many records routinely maintained by law enforcement agencies are not personnel records. For example, the information contained in the initial incident reports of an on-duty shooting are typically not “personnel records” as that term is defined in Penal Code section 832.8. It may be true that such shootings are routinely investigated by the employing agency, resulting eventually in some sort of officer appraisal or discipline. But only the records generated in connection with that appraisal or discipline would come within the statutory definition of personnel records (Pen. Code, § 832.8, subd. (d)). We do not read the phrase “records relating to . . . [¶] . . . *72 [!]••• [e]mployee . . . appraisalQ or discipline” (ibid.) so broadly as to include every record that might be considered for purposes of an officer’s appraisal or discipline, for such a broad reading of the statute would sweep virtually all law enforcement records into the protected category of “personnel records” (id., § 832.8).
Government Code section 6254’s subdivision (f) lends some support to our conclusion. Under that statute, when a shooting by a peace officer occurs during an arrest (Gov. Code, § 6254, subd. (f)(1)) or in the course of responding to a complaint or request for assistance (id., § 6254, subd. (f)(2)), and when the officer’s name is recorded as one of the “factual circumstances” of the incident, disclosure of the officer’s name is generally required. It thus appears that the Legislature draws a distinction between (1) records of factual information about an incident (which generally must be disclosed) and (2) records generated as part of an internal investigation of an officer in connection with the incident (which generally are confidential). We therefore agree with this point made in a 2008 opinion by the California Attorney General; “Generally speaking, a response to a request just for the names of officers involved in a particular incident may be provided without revealing any investigatory or disciplinary matter that may have arisen out of the incident. Disclosure would merely communicate a statement of fact that the named officers were involved in the incident. It would not imply any judgment that the actions taken were inappropriate or even suspect.” (91 Ops.Cal.Atty.Gen. 11, 16-17 (2008), fn. omitted.) An employing agency is, of course, free to emphasize, when complying with a California Public Records Act request, that its disclosure of the names of officers involved in an incident does not imply any wrongdoing by those officers.
Significantly, the Pitchess statutes are silent as to whether the names of officers involved in shootings are protected “personnel records.” (Pen. Code, § 832.8.) That silence is important because, as this court observed in Commission on Peace Officer Standards, the personnel records exemption is limited to the categories of information that are expressly “enumerated” in Penal Code section 832.8. (Commission on Peace Officer Standards, supra, 42 Cal.4th at p. 293.) That the Legislature did not intend to protect peace officers’ identities can also be inferred from the Legislature’s enactment of Penal Code section 830.10, which requires uniformed officers to display their name or identification number. That statute reflects a legislative policy that, generally, the public has a right to know the identity of an officer involved in an on-duty shooting.
Misplaced is the reliance by the Union and the City on this court’s decision in Copley, supra, 39 Cal.4th 1272. There, as we noted earlier, a newspaper publisher sought records of an administrative appeal brought by a sheriff’s *73 deputy who had been terminated. This court concluded that the records (including the deputy’s name) were confidential personnel records under the Pitchess statutes. (Copley, at pp. 1297-1298.) Later, in Commission on Peace Officer Standards, this court emphasized that the records requested in Copley would have “linked” the deputy’s name to “private or sensitive” personnel matters, thus explaining why the name at issue in Copley was protected. (Commission on Peace Officer Standards, supra, 42 Cal.4th at p. 295; see id. at pp. 298-299.) Here, by contrast, disclosing the names of officers involved in various shootings would not imply that those shootings resulted in disciplinary action against the officers, and it would not link those names to any confidential personnel matters or other protected information.
In arguing here against disclosure of the officers’ names, the Union and the City note this court’s disapproval in Copley, supra, 39 Cal.4th at page 1298, of the Court of Appeal’s statement in New York Times, supra, 52 Cal.App.4th at page 101, that “ ‘an individual’s name is not exempt from disclosure’ ” under the Pitchess statutes. (Copley, at p. 1298.) But, as we explained in Commission on Peace Officer Standards, supra, 42 Cal.4th at page 298, this court disapproved the statement from New York Times only “ ‘insofar as it applie[d] to disciplinary matters like the one at issue’ ” in Copley. (See Copley, at p. 1298.) The records sought in Copley linked the officer’s name, not just to an on-duty shooting, but to a confidential disciplinary action involving the officer, and therefore they were exempt from disclosure. (See Commission on Peace Officer Standards, supra, 42 Cal.4th at pp. 295, 298-299.) Thus, Copley’s disapproval of the statement from New York Times did not alter the latter case’s core holding, generally permitting disclosure of the names of peace officers involved in on-duty shootings. (See 91 Ops.Cal.Atty.Gen., supra, at pp. 13-15 [discussing Copley’s effect on New York Times].)
Nor does Government Code section 6254’s subdivision (c), which is part of the California Public Records Act, help the Union and the City in their effort to prevent disclosure of the names of officers involved in shootings. As noted (see p. 67, ante), that provision exempts from disclosure “[pjersonnel . . . or similar files” if disclosure “would constitute an unwarranted invasion of personal privacy.” (Gov. Code, § 6254, subd. (c).) A serious question arises as to whether the names of peace officers involved in particular law enforcement incidents can be characterized as “[personnel. . . or similar files” (ibid.). Moreover, when it comes to the disclosure of a peace officer’s name, the public’s substantial interest in the conduct of its peace officers outweighs, in most cases, the officer’s personal privacy interest. As we noted in Commission on Peace Officer Standards: “Peace officers ‘hold one of the most powerful positions in our society; our dependence on them is high and the potential for abuse of power is far from insignificant.’ (City of Hemet v. Superior Court (1995) 37 Cal.App.4th 1411, 1428 [44 Cal.Rptr.2d *74 532].) A police officer ‘possesses both the authority and the ability to exercise force. Misuse of [this] authority can result in significant deprivation of constitutional rights and personal freedoms, not to mention bodily injury and financial loss.’ (Gray v. Udevitz (10th Cir. 1981) 656 F.2d 588, 591.)” (Commission on Peace Officer Standards, supra, 42 Cal.4th at pp. 299-300.) Thus, the public’s significant interest in the conduct of its peace officers “diminishes and counterbalances” an officer’s privacy interest in keeping his or her name confidential. (Id. at p. 299.)
In a case such as this one, which concerns officer-involved shootings, the public’s interest in the conduct of its peace officers is particularly great because such shootings often lead to severe injury or death. Here, therefore, in weighing the competing interests, the balance tips strongly in favor of identity disclosure and against the personal privacy interests of the officers involved. Of course, if it is essential to protect an officer’s anonymity for safety reasons or for reasons peculiar to the officer’s duties — as, for example, in the case of an undercover officer — then the public interest in disclosure of the officer’s name may need to give way. (See International Federation of Professional and Technical Engineers, Local 21, AFL-CIO v. Superior Court (2007) 42 Cal.4th 319, 337 [64 Cal.Rptr.3d 693, 165 P.3d 488].) That determination, however, would need to be based on a particularized showing, which was not made here.
We next consider the City’s assertion that Government Code section 6254’s subdivision (f) permits it to withhold the names of officers involved in on-duty shootings. That provision exempts from disclosure “[r]ecords of . . . investigations conducted by . . . any state or local police agency.” (Ibid.) The Times here is not seeking the records of any administrative or criminal investigation, so that exemption is inapplicable.
Finally, we consider the catchall exemption in Government Code section 6255’s subdivision (a), which allows a public agency to withhold any public record if the agency shows that “on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record.” The catchall exemption sets forth a balancing test, and we have already concluded that, generally, the balance of interests favors disclosing the names of peace officers involved in on-duty shootings. (See pp. 73-74, ante.) Vague safety concerns that apply to all officers involved in shootings are insufficient to tip the balance against disclosure of officer names. As we have said in the past, “[a] mere assertion of possible endangerment does not ‘clearly outweigh’ the public interest in access to . . . records.” (CBS, Inc. v. Block, supra, 42 Cal.3d at p. 652.)
The Union and the City assert that disclosing the names of peace officers involved in shootings could lead to harassment of those officers and their *75 families. In rejecting that argument, the trial court found that the Union and the City had offered “no evidence” of a “specific safety concern regarding any particular officer.” We agree. The declaration by Long Beach Police Lieutenant Cox (submitted by the City) described the possibility of gang retaliation against officers involved in shooting gang members, but those concerns were general in nature. The December 2010 Zerby shooting did not involve a gang member, and the Union and the City did not identify other shootings that did involve a gang member. The Cox declaration also mentioned two safety bulletins warning of “potential retaliation/threats” against officers involved in shootings, and it described graffiti that read “Strike Kill a Cop,” but those vague concerns do not establish any specific danger to the officers involved in the Zerby shooting or any shooting that occurred in the six years before the Zerby shooting (see the Times’s public records request, quoted at p. 64, ante).
We do not hold that the names of officers involved in shootings have to be disclosed in every case, regardless of the circumstances. We merely conclude, as did the trial court and the Court of Appeal, that the particularized showing necessary to outweigh the public’s interest in disclosure was not made here, where the Union and the City relied on only a few vaguely worded declarations making only general assertions about the risks officers face after a shooting. The public records request by the Times is broadly worded and covers a wide variety of incidents. Thus, the Union and the City sought a blanket rule preventing the disclosure of officer names every time an officer is involved in a shooting. Such a rule would even prevent disclosure of the name of an officer who acted in a heroic manner that was unlikely to provoke retaliation of any kind, in which case officer safety would not be an issue. We reject that blanket rule.
The trial court’s denial of injunctive relief was without prejudice to any later evidentiary showing that disclosing a particular officer’s name would compromise that officer’s safety or the safety of the officer’s family. That ruling permits further litigation by the Union, and it reflects the trial court’s recognition, which we share, that the public’s interest in access to public records is not absolute and must be weighed against the countervailing privacy and safety interests of peace officers. Understandable are the general safety concerns of officers who fear retaliation from angry members of the community after an officer-involved shooting, especially when the shooting results in the death of an unarmed person. But the Legislature, whose laws we must construe, has not gone so far as to protect the names of all officers involved in such shootings. That the Legislature generally considers it important for the public to know the identities of the officers serving the community is reflected in the statutory provision requiring a uniformed officer to display either a name or an identification number (Pen. Code, § 830.10).
*76 Disposition
We affirm the judgment of the Court of Appeal, which upheld the trial court’s denial of the Union’s requested injunctive relief.
Cantil-Salcauye, C. L, Baxter, 1, Werdegar, 1, Corrigan, L, and Liu, 1, concurring.

Retired Associate Justice of the Supreme Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

 The Times contends that it was not properly served with the Cox declaration. The Times does not, however, assert that it raised that issue in the trial court, and hence the issue appears to have been forfeited. In any case, as discussed below, the trial court concluded that the facts asserted in the Cox declaration were too general and speculative to support the Union’s request for injunctive relief. Therefore, any failure to properly serve the Cox declaration did not adversely affect the Times.

 Both the trial court and the Court of Appeal rejected the Times’s legal issue that Government Code sections 6258 and 6259 set forth the exclusive means for litigating whether requested records must be disclosed and that therefore declaratory relief was inappropriate. (See Filarsky v. Superior Court (2002) 28 Cal.4th 419 [121 Cal.Rptr.2d 844, 49 P.3d 194] [holding that a city is not entitled to declaratory relief regarding its disclosure obligations under the California Public Records Act, but not deciding whether a third party — such as the Union here — is entitled to such relief].) We did not grant review to decide that legal issue, and we express no view on the matter. The issue remains open, and the Times can reassert it in any future proceedings.