Filed 8/23/23; Certified for Publication 9/25/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DARWIN BONDGRAHAM, et al., <br><br>     Petitioners, <br><br> v. <br><br> THE SUPERIOR COURT OF ALAMEDA COUNTY, <br><br>     Respondent; <br><br> CITY OF OAKLAND, et al., <br><br>     Real Parties in Interest. | A165187 <br><br> (Alameda County Super. Ct. No. RG20071657) |

In 2019, Oakland journalists Darwin BondGraham and Ali Winston (petitioners) filed requests for information from the Oakland Police Department pursuant to the California Public Records Act (CPRA) (previously codified as Gov. Code, § 6250 et seq. and recodified and reorganized effective January 1, 2023 as Gov. Code, § 7921.000 et seq.), including for information regarding the "Celeste Guap" scandal, which involved several Oakland police officers who had sex with Celeste Guap while she was underage.[1] The trial court granted a writ of mandate ordering Oakland to produce documents responsive to petitioners' requests, and Oakland ultimately produced a redacted version of the report of the internal

_____

[1] Although Celeste Guap has been publicly identified by her legal name, we will refer to her as Guap, a name she used on Facebook.

affairs investigation into the scandal. Petitioners challenged certain of Oakland's redactions to the report, and the trial court issued an order on petitioners' challenges. Petitioners now seek extraordinary writ relief, arguing that certain of Oakland's redactions were improper under 2018 legislation requiring public access to certain records of police misconduct. We agree that some of the challenged redactions were not permitted under the statute, and thus grant the petition.

## BACKGROUND

In 2018, the Governor signed Senate Bill No. 1421 (2017–2018 Reg. Sess.) into law, amending Penal Code section 832.7 to require public access to certain records of police misconduct and use of force.[2] Shortly thereafter, during the week of January 1, 2019, petitioners filed 29 requests for information from the Oakland Police Department pursuant to the CPRA. One such request was for all investigative reports regarding "OPD Internal Affairs Division Case 15-0771," an internal affairs investigation of the "sexual assault of a minor by multiple Oakland Police Officers," as well as the related death of an Oakland Police officer by suicide.

In response to petitioners' requests, the Oakland Police Department released a redacted version of the 252-page "Report of Internal Investigation File No. 15-0771" (the Guap report) (unnecessary capitalization omitted).

On August 17, 2020, petitioners filed a petition for a writ of mandate from the trial court requiring the three real parties—the City of Oakland, the Oakland Police Department, and Oakland's interim Chief of Police, Susan Manheimer (together, Oakland)—to comply with the CPRA, alleging both that Oakland had failed to adequately and timely respond to petitioners'

_____

[2] Further undesignated statutory references are to the Penal Code.

2

requests and that the productions made to date had been inappropriately redacted.

On April 2, 2021, the trial court held a hearing on the petition. And on April 7, the trial court granted it, requiring that real parties "produce all responsive records sought by Petitioners, including documents as well as audio and video files, within six months of service of the writ on Respondents." The trial court's order also established a process by which Oakland could redact the documents to be produced, and petitioners could challenge those redactions by presenting the documents to the trial court for in camera review.

By letter dated May 5, petitioners challenged certain of Oakland's redactions, including to the Guap report. After a further exchange of letters, on August 12, the parties filed a joint trial brief regarding redaction issues. Two sealed hearings on the redactions were held on August 24 and September 14.

On March 17, 2022, the trial court issued its order on the parties' redaction disputes, beginning with what it called its 10 "general principles" under section 832.7, including the following:

"3. A police officer who is a witness may have their identity redacted under (b)(6)(B). Subsection (b)(6)(A) does not compel disclosure of their name, as individual officers do not lose their rights to privacy or anonymity simply by witnessing an incident. [¶] . . . [¶]

"7. Section 832.7(b)(4) and Section 832.7(b)(5) (formerly (b)(3) and (b)(4)) permit withholding portions of documents via redaction. Petitioners argue that because (b)(6) enumerates the 'only' bases for redaction, (b)(4) and (b)(5) cannot be grounds for redaction, only withholding. That reading is inconsistent with the language of (b)(5), which refers to 'information' and

3

'statements' that can and cannot be released—it focuses on the information within a record rather than treating entire documents at scale.

"8.  Disclosure of separate incidents occurring at separate times from the incident giving rise to a disclosable sustained finding is not permitted under Penal Code 832.7(b), unless those separate incidents themselves gave rise to a sustained finding.  The fact that internal affairs or another subdivision of a police department tasked with investigating a peace officer examines several separate incidents together does not transform them into a single 'incident' for purposes of disclosure.  For example, different sexual encounters on different dates between an officer and an individual are not one 'incident.'  Likewise, when such a division investigates multiple officers involved in separate incidents that are unrelated but for a common complainant or common type of misconduct, any incidents that do not lead to disclosable findings must be redacted.  Notwithstanding section (b)(2), which requires disclosure of all materials compiled or presented for review, portions of witness statements related to non-disclosable findings may be redacted. (b)(2) must be read in harmony with (b)(4) and (b)(5), which prohibit disclosure of non-sustained findings related to sexual assault and dishonesty. Permitting disclosure of all underlying evidence presented for review under (b)(2) would undermine the non-disclosure requirements under (b)(4) and (b)(5)."

After setting forth these "general principles," the trial court went on to make the following specific rulings regarding the parties' redaction disputes:

"**Rulings Pertaining to specific Officers' files:**

"1.  Respondents the City of Oakland et al. ('the City') properly redacted text in the final internal affairs report related to [] Guap regarding Officers Terryl Smith, Warit Uttapa, Luis Roman, and Leroy Johnson.  While these

4

officers all received disclosable sustained findings, the redacted text in the sections of the report evaluating each officers' conduct relate to other incidents that are not independently disclosable. The text is therefore properly redacted under (b)(4) and (b)(5) (formerly (b)(3) and (b)(4)).

"2. The City properly redacted text related to Officers A, B, C, D, E and F in the final internal affairs report. There were no disclosable sustained findings against any of these officers.

"3. With respect to Officer C there was no sustained finding of sexual assault by Officer C, and no finding that he exchanged text messages of a sexual nature while on duty or by means of force, threat, coercion, extortion, offer of leniency or other official favor, or under the color of authority." (Boldface omitted.)

Petitioners sought extraordinary writ relief to compel the trial court to vacate its order allowing Oakland to redact and withhold records.[3] We issued an order to show cause why the relief requested by petitioners should not be granted, Oakland filed a written return to the order to show cause, petitioners filed a traverse/reply, and we heard oral argument.[4] We now grant the petition.

---

[3] A trial court order supporting the decision of a public agency refusing to disclose records "shall be immediately reviewable by petition to the appellate court for issuance of an extraordinary writ." (Gov. Code, § 7923.500, subd. (a).)

[4] We also granted petitioners' motion to file certain documents under seal, including the transcripts of both trial court hearings. (See Cal. Rules of Court, rule 8.46(b).) Oakland also filed its appendix, containing the unredacted version of the Guap report, under seal. (See Cal. Rules of Court, rule 8.46(b), (g)(2).)

## DISCUSSION

Petitioners make three arguments: (1) that the trial court erred in permitting certain redactions under section 837.2, subdivisions (b)(4) and (b)(5), (2) that police officers who witness misconduct may not have their names redacted under section 837.2, subdivision (b)(6)(B), and (3) that redaction should not have been permitted under former Government Code section 6254, subdivision (f). We agree with all three arguments. Before we explain why, we set forth some governing principles.

### The *Pitchess* Statutes and Senate Bill No. 1421

In *Becerra v. Superior Court* (2020) 44 Cal.App.5th 897 (*Becerra*), our colleagues in Division Three set forth the following background regarding Senate Bill No. 1421:

"In 1978, the Legislature enacted sections 832.7 and 832.8 to mandate confidentiality of peace officer personnel records. (Stats. 1978, ch. 630, §§ 5, 6, p. 2083.) These statutes, along with certain amendments to the Evidence Code, also codified *Pitchess v. Superior Court* (1974) 11 Cal.3d 531, which recognized the right of a criminal defendant to compel the discovery of evidence in a law enforcement officer's personnel file that is relevant to the defendant's ability to defend against a criminal charge upon a sufficient showing of good cause. (See *Association for Los Angeles Deputy Sheriffs v. Superior Court* (2019) 8 Cal.5th 28, 40–41 (*Association for Los Angeles Deputy Sheriffs*).)

"Historically, the so-called *Pitchess* statutes were considered an exemption to disclosure under the CPRA. (See *Copley Press* [*Inc., v. Superior Court* (2006)] 39 Cal.4th [1272,] 1283 [recognizing . . . § 832.7 as an exemption under Gov. Code, § 6254(k)].) Before its amendment in 2018, section 832.7 made certain peace officer records and information confidential

6

and nondisclosable in any criminal or civil proceeding except pursuant to discovery under certain provisions of the Evidence Code.  (See § 832.7, former subd. (a), as amended by Stats. 2003, ch. 102, § 1 . . . .)  The first category of confidential records pertained to '[p]eace officer or custodial officer personnel records,' which included among other things certain records that relate to employee discipline or certain complaints and to investigations of complaints pertaining to how the officer performed his or her duties.  (*Ibid.*; see § 832.8)  The second category consisted of 'records maintained by any state or local agency pursuant to section 832.5' (§ 832.7, former subd. (a)), which required '[e]ach department or agency in [California] that employs peace officers [to] establish a procedure to investigate complaints by members of the public against the personnel of these departments or agencies' and further required such '[c]omplaints and any reports or findings relating' to them be retained for 'at least five years' and 'maintained either in the peace or custodial officer's general personnel file or in a separate file' (§ 832.5, subds. (a)(1), (b); see also § 832.5, subds. (c), (d)(1)).  The third category extended confidentiality to 'information obtained from' the prior two types of records. (§ 832.7, former subd. (a).)  Thus, the *Pitchess* statutes ' "reflect[ ] the Legislature's attempt to balance a litigant's discovery interest with an officer's confidentiality interest." ' (*Association for Los Angeles Deputy Sheriffs*, *supra*, 8 Cal.5th at p. 41.)

"In 2018, the Governor signed Senate Bill No. 1421 [(Senate Bill No. 1421)], which amended section 832.7.  (§ 832.7, as amended by Stats. 2018, ch. 988, § 2, eff. Jan. 1, 2019.)  Under Senate Bill [No.] 1421, section 832.7 retains the provision that 'personnel records of peace officers and custodial officers and records maintained by any state or local agency pursuant to Section 832.5, or information obtained from these records, are

confidential and shall not be disclosed' in any criminal or civil proceeding except pursuant to discovery under certain portions of the Evidence Code. (§ 832.7, subdivision (a) . . . ; see also § 832.7, subd. (h).) As amended, however, section 832.7 [subdivision] (a) now provides that the confidentiality of officer personnel records is subject to a newly added subdivision (b) . . . , which states in relevant part: 'Notwithstanding subdivision (a) [of section 832.7], subdivision (f) of [former] Section 6254 of the Government Code, or any other law, the following peace officer or custodial officer personnel records and records maintained by any state or local agency shall not be confidential and shall be made available for public inspection pursuant to the California Public Records Act (Chapter 3.5 (commencing with [former] Section 6250) of Division 7 of Title 1 of the Government Code)" (§ 832.7, [subd.] (b)(1), namely records 'relating to the report, investigation, or findings' of an incident falling into any of the following three categories: (1) an incident in which an officer discharged a firearm at a person or used force against a person resulting in death or great bodily injury (§ 832.7, [subd.] (b)(1)(A)(i), (ii)); (2) 'an incident in which a sustained finding was made by any law enforcement agency or oversight agency' that an officer 'engaged in sexual assault[5] involving a member of the public' (§ 832.7, [subd.] (b)(1)(B)(i)[–](iii)); and (3) 'an incident in which a sustained finding was made by any law enforcement agency or oversight agency of dishonesty

---

[5] Sexual assault is defined as "the commission or attempted initiation of a sexual act with a member of the public by means of force, threat, coercion, extortion, offer of leniency or other official favor, or under the color of authority." (§ 832.7, subd. (b)(1)(B)(ii).) The "propositioning for or commission of any sexual act while on duty is considered a sexual assault" for these purposes. (*Ibid.*)

by a peace officer or custodial officer directly relating to the reporting, investigation, or prosecution of a crime, or directly relating to the reporting of, or investigation of misconduct by, another peace officer or custodial officer, including, but not limited to, any sustained finding of perjury, false statements, filing false reports, destruction, falsifying, or concealing of evidence' (§ 832.7, subd. (b)(1)(C))." (*Becerra, supra,* 44 Cal.App.5th at pp. 914–916.)

Section 832.7 contains several provisions regarding what records or information the agency may redact or withhold (see § 832.7, subd. (b)(4)–(9), (12)), three of which are directly relevant here:

Subdivision (b)(4), which states that "[a] record from a separate and prior investigation or assessment of a separate incident shall not be released unless it is independently subject to disclosure pursuant to this subdivision."

Subdivision (b)(5), which states that "If an investigation or incident involves multiple officers, information about allegations of misconduct by, or the analysis or disposition of an investigation of, an officer shall not be released pursuant to subparagraph (B), (C), (D), or (E) of paragraph (1), unless it relates to a sustained finding regarding that officer that is itself subject to disclosure pursuant to this section. However, factual information about that action of an officer during an incident, or the statements of an officer about an incident, shall be released if they are relevant to a finding against another officer that is subject to release pursuant to subparagraph (B), (C), (D), or (E) of paragraph (1)."

Subdivision (b)(6), which states that "[a]n agency shall redact a record disclosed pursuant to this section only for any of the following purposes:

9

"(A) To remove personal data or information, such as a home address, telephone number, or identities of family members, other than the names and work-related information of peace and custodial officers.

"(B) To preserve the anonymity of whistleblowers, complainants, victims, and witnesses.

"(C) To protect confidential medical, financial, or other information of which disclosure is specifically prohibited by federal law or would cause an unwarranted invasion of personal privacy that clearly outweighs the strong public interest in records about possible misconduct and use of force by peace officers and custodial officers.

"(D) Where there is a specific, articulable, and particularized reason to believe that disclosure of the record would pose a significant danger to the physical safety of the peace officer, custodial officer, or another person."

In *Becerra*, the court emphasized that "the CPRA must be 'broadly construed' because its statutory scheme 'furthers the people's right of access.' (Cal. Const., art 1, § 3, subd. (b)(2)." (*Becerra*, *supra*, 44 Cal.App.5th at p. 913.) The legislation also "balances the dual concerns for privacy and disclosure by providing for various exemptions that permit public agencies to refuse disclosure of certain public records. ([former] Gov. Code, §§ 6254–6255.)" (*Becerra*, at p. 914.) *Becerra* went on to note that "CPRA exemptions are narrowly construed [citation], and the agency opposing disclosure bears the burden of proving an exemption applies." (*Becerra*, at p. 914; see *Ventura County Deputy Sheriffs' Assn v. County of Ventura* (2021) 61 Cal.App.5th 585, 592.)

We review questions of statutory interpretation, including the interpretation of section 832.7, de novo. (*Ventura County Deputy Sheriffs'*

10

*Association v. County of Ventura, supra*, 61 Cal.App.5th at p. 590; *Becerra, supra,* 44 Cal.App.5th at p. 917.)

**Permitting Some of the Challenged Redactions Under Subdivisions (b)(4) and (b)(5) Was Error**

Petitioners' first argument is that the trial court improperly permitted Oakland to redact certain information under section 832.7, subdivisions (b)(4) and (b)(5), including the Guap report's training and policy recommendations; witness statements containing general information about Guap and her social-media use (without any information about allegations of misconduct against any officer); screenshots of Guap's Facebook profile; and large portions of her statements to investigators.[6]

Taking up petitioners' cited subdivisions in reverse order, we turn first to section 832.7, subdivision (b)(5), and begin by noting that this subdivision permits redaction only of "information about allegations of misconduct by, or the analysis or disposition of an investigation of, an officer." (§ 837.2, subd. (b)(5).) The trial court's order makes no mention of this limitation, and Oakland offers no argument that the various challenged redactions qualify under it. Plainly, certain of the redacted information, including the Guap report's general policy and training recommendations, and screenshots of Guap's Facebook profile, are not "information about allegations of misconduct

---

[6] We cannot help but note that in making the argument, petitioners refer to various items that are not clearly analyzed or differentiated, either in their petition or in their briefing. Moreover, petitioners hedge on some categorical statements. For example, petitioners say things like "much of this information is relevant," then citing to particular statements without analysis. Or this: "This material should therefore be disclosed, except for the small amounts of information about non-disclosable incidents that are not relevant," again without specifying what. And a similar comment is made as to Guap's statements and her screenshots, where petitioners say "again, much of this is not covered by paragraph (b)(5)," without differentiating or providing analysis.

by, or the analysis or disposition of an investigation of, an officer," and therefore cannot be redacted under this subdivision.

Section 832.7, subdivision (b)(5) contains a second limitation on what can be redacted, providing that "factual information about that action of an officer during an incident, or the statements of an officer about an incident, shall be released if they are relevant to a finding against another officer that is subject to release." The trial court's order contains no mention or analysis of this provision either. Oakland does briefly address this part of this subdivision, arguing without elaboration that the trial court made "implicit factual finding[s]" that "each redaction upheld under this portion of the statute was not 'relevant to a [disclosable] finding against another officer.' " We do not agree the trial court made such "implicit" findings, as it nowhere discussed application of the second limitation at all, even by way of providing examples. Neither does Oakland's brief, which fails to discuss any specific redactions, and provides not a single example of a redaction under subdivision (b)(5) that was "not 'relevant to a [disclosable] finding against another officer.' " (See *Sharabianlou v. Karp* (2010) 181 Cal.App.4th 1133, 1149 ["Counsel is obligated to refer us to the portions of the record supporting his or her contentions on appeal . . . we will not scour the record on our own in search of supporting evidence"].)

By contrast, petitioners have identified material redacted under section 832.7, subdivision (b)(5) that should have been disclosed because it was relevant to Guap's credibility, including, for example, comments from Guap's mother about Guap that are in the sealed material.[7]

---

[7] While such material may not be properly redacted under section 832.7, subdivision (b)(6), at oral argument both counsel acknowledged that this material might be redacted under section 832.7, subdivision (b)(7).

In sum, we conclude that the trial court did not apply the proper test for evaluating Oakland's redactions under section 832.7, subdivision (b)(5). Likewise under subdivision (b)(4), the other basis for Oakland's redactions.

Section 832.7, subdivision (b)(4) provides that "[a] record from a separate and prior investigation or assessment of a separate incident shall not be released unless it is independently subject to disclosure pursuant to this subdivision." As noted, Oakland asserted subdivision (b)(4) as a basis for all the redactions just discussed. Oakland also used this subdivision to redact the discussion of certain sustained findings against Officer Smith, as well as sustained findings against Officer Uttapa.

Petitioners argue that "[b]ecause the Guap Report documents a single investigation, no part of it is a 'record from a separate and prior investigation or assessment.' " Oakland argues that the Guap report is a "compilation document," combining assessments of separate incidents or prior investigations into one report. Oakland also argues that redaction, as opposed to withholding of entire records, is permitted under section 832.7, subdivisions (b)(4) and (b)(5).[8] Finally, Oakland argues that " 'separate and prior' " modifies only " 'investigation,' " such that subdivision (b)(4) permits it to redact "information from 1) separate and prior investigations; and 2) assessments of separate incidents." We agree with petitioners.

Section 832.7, subdivision (b)(4) by its plain text permits Oakland to withhold "a record," not "information" within a record. Under former Government Code section 6252, subdivision (e), a "record" is defined as a "writing containing information." As Oakland's own brief explains in its argument about subdivision (b)(5), "[s]ubdivision (b)(5) refers to releasing (or

---

[8] Petitioners concede that redaction is permitted under section 832.7, subdivision (b)(5).

13

not releasing) 'information' within records; as defined by [former] Government Code section 6252[, subdivision] (e), a 'record' is a 'writing containing information.' That is, information is a component part of a record, not the record itself. The only reasonable interpretation of subdivision (b)(5), then, is that 'information' *within records* can be withheld only via redaction."[9] Exactly. But unlike section 832.7, subdivision (b)(5), subdivision (b)(4) permits withholding "a record," not "information." In addition to this difference, the statute elsewhere distinguishes between withholding records and withholding information within a record by redaction. For example, under section 832.7, subdivision (b)(6), agencies "shall redact a record" for various purposes, including to remove certain types of "information." (§ 832.7, subds. (b)(6)(A), (b)(6)(C).) And under certain circumstances, agencies may delay the disclosure of both "records or information." (§ 832.7, subd. (b)(8)(A)(ii), (iii); see also, e.g., § 832.7(b)(12)(B) [withholding of "record or information"].)

Oakland also argues that *Becerra*, *supra*, 44 Cal.App.5th 897 held that section 832.7, subdivision (b)(4) permits redaction of records. *Becerra* concluded that "while responsive records may be and have been entirely withheld under the CPRA catchall exemption [where "on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record" (former Gov.

_____

[9] Oakland makes the same point again a few pages later: "The use of the word 'information' [in section 832.7, subdivision (b)(5)] rather than 'record' or 'file' is critical. As noted above, because [former] Government Code section 6252[, subdivision] (e) defines 'record' as a 'writing containing information,' it contemplates that information is a component part of a record, not the record itself. So in requiring 'information' to be withheld, [section 832.7, subdivision] (b)(5) plainly requires distinguishing bits of information within a record rather than treating entire documents at scale."

14

Code, § 6255, subd. (a))], a public agency remains otherwise obligated to redact exempt information from a nonexempt record when the exempt and nonexempt materials are not 'inextricably intertwined' and are ' "otherwise reasonably segregable." ' " (*Becerra, supra,* 44 Cal.App.5th at p. 929.)  In a footnote briefly discussing the legislative history of subdivision (b)(6), the *Becerra* court referred to the "redaction provisions in subdivision (b)(5)." (*Becerra, supra,* 44 Cal.App.5th at p. 928, fn. 7.)  But as just discussed, subdivision (b)(5) refers to "information," and thus clearly permits redaction. *Becerra* did not discuss or analyze subdivision (b)(4), and had no occasion to consider the fact that it refers to records, not information.

Oakland argues that petitioners' construction would lead to absurd results, namely that "disclosure of information would turn on whether the police department combined assessments of separate incidents or prior investigations reports in one document, rather than on the content of those interviews."  And, Oakland asserts, the Guap report is such a "compilation of numerous individual investigatory records."  Whatever the difficulties of defining the applicable "record" under section 832.7, subdivision (b)(4), where multiple reports or records are combined into a single document, those difficulties do not confront us here.  The Guap report, entitled "Report of Internal Investigation File No. 15-0771," is a single record, with a single subject—a summary of a single internal affairs investigation.  The preparation of the report was prompted by a single incident, an officer's suicide and his suicide note claiming that Guap was the "catalyst" behind his death.  The report identifies a single primary investigator in the Internal Affairs Division who prepared it.  And the report itself repeatedly refers to the singular "investigation" it summarizes.  The fact that the investigation included allegations of misconduct against multiple officers, or that it

15

investigated multiple incidents of potential misconduct, does not transform the report into a "compilation" of records for the purposes of section 832.7, subdivision (b)(4).

But even if the Guap report were a compilation of multiple records, we do not agree with Oakland's reading of subdivision (b)(4) as permitting it to redact "assessments" of separate "incidents." In arguing that "prior" modifies only "investigation" and not "assessment," Oakland relies on the last antecedent rule and *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 743, which case explained: " 'A longstanding rule of statutory construction—the "last antecedent rule"—provides that "qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to or including others more remote." ' " (*Renee J. v. Superior Court, supra*, 26 Cal.4th at p. 743.) This rule is inapplicable here. The question is how "prior" modifies words or phrases coming *after* it. There are no "antecedents" at issue.

Instead, we apply the following rule: "Most readers expect the first adjective in a series of nouns or phrases to modify each noun or phrase in the following series unless another adjective appears. For example, if a writer were to say, 'The orphanage relies on donors in the community to supply the children with used shirts, pants, dresses, and shoes,' the reader expects the adjective 'used' to modify each element in the series of nouns, 'shirts,' 'pants,' 'dresses,' and 'shoes.' The reader does not expect the writer to have meant that donors supply 'used shirts,' but supply 'new' articles of the other types of clothing." (*Ward General Ins. Services, Inc. v. Employers Fire Ins. Co.* (2003) 114 Cal.App.4th 548, 554.) So too here. "Separate and prior" modifies both "investigation" and "incident." Accordingly, no part of the Guap report is a

"record from a separate and prior investigation or assessment," and redaction is not permitted under section 832.7, subdivision (b)(4).

**Officer Names Were Improperly Redacted Under Section 832.7, Subdivision (b)(6)(B)**

Petitioners next argue that the trial court improperly allowed Oakland to redact the names of officers as "witnesses" under section 837.2, subdivision (b)(6)(B), which provides that an agency "shall redact a record disclosed pursuant to this section" in order to "preserve the anonymity of . . . witnesses."

The parties dispute whether officers who are witnesses to potential misconduct can have their names or other identifying information redacted under subdivision (b)(6)(B). Petitioners argue that they cannot, relying on *Long Beach Police Officers Assn v. City of Long Beach* (2014) 59 Cal.4th 59 (*Long Beach*), which held that disclosure of the names of officers involved in a shooting was not prohibited under former Government Code section 6254, subdivision (c), which exempted from disclosure " '[p]ersonnel . . . or similar files' " if disclosure " 'would constitute an unwarranted invasion of personal privacy.' " And, the court went on to observe, "when it comes to the disclosure of a peace officer's name, the public's substantial interest in the conduct of its peace officers outweighs, in most cases, the officer's personal privacy interest." (*Long Beach*, *supra*, 59 Cal.4th at p. 73.) Petitioners also rely on section 832.7, subdivision (b)(6)(A), which allows the redaction of personal data "other than the names and work-related information of peace and custodial officers," and on subdivision (i), which expressly endorses the result in *Long Beach*. (See § 832.7, subd. (i) ["Nothing in this chapter is intended to limit the public's right of access as provided for in *Long Beach Police Officers Association v. City of Long Beach* (2014) 59 Cal.4th 59"].)

17

Oakland, by contrast, argues that the statute providing for redaction to preserve the anonymity of witnesses applies equally to civilians and officers. And the trial court agreed, holding that after a "reasonable, diligent search" to determine whether a witness was anonymous, "[a] police officer who is a witness may have their identity redacted under (b)(6)(B).  Subsection (b)(6)(A) does not compel disclosure of their name, as individual officers do not lose their rights to privacy or anonymity simply by witnessing an incident."

We have reviewed the challenged redactions made under section 832.7, subdivision (b)(6)(B), as well as the unredacted version of the Guap report, which review reveals that Oakland has redacted entire pages of the Guap report under subdivisions (b)(4), (b)(5), and (b)(6)(B).  Two examples are illustrative:

Under the heading "Credibility Assessments" of "Witness Officers," the report lists numerous officers, indicates whether they were found to credible and whether their statements were consistent with the evidence, and gives a brief history of any previous complaints of "Truthfulness or Reports and Bookings" regarding each officer.  All but three of these "credibility assessments" are entirely redacted, including under subdivision (b)(6)(B).

In "Appendix A – Witness Interviews," the report contains summaries of recorded interviews with numerous officers.  Each summary discusses the officer's social media accounts, and whether the officer had received or accepted "friend requests" from, or interacted with, Guap on social media. The interview summaries of several of the officers contain a few very brief descriptions of conversations with other officers regarding Guap.  But these entries do not contain anything that could be fairly described as one officer describing or witnessing another officer's misconduct.  In sum, we cannot

18

agree that redaction of the officer's names or other identifying information from the interview summaries is appropriate under section 832.7, subdivision (b)(6)(B) in order to "preserve the anonymity of . . . witnesses."

**Redaction Was Improper Under Government Code Section 6254, Subdivision (f)**

Former Government Code section 6254, subdivision (f) exempted from disclosure "[r]ecords of complaints to, or investigations conducted by, . . . any state or local police agency."[10]  Oakland relied on this provision to redact several pages from a document dated December 10, 2001 regarding a Board of Review held to discuss the circumstances of a firearm discharge on January 11, 2001.

The first page of the trial court's order states that "[i]f information in a personnel record is subject to one of the exemptions in [former Government Code section] 6254, including [former Government Code] section 6254[, subdivision] (f), the agency may redact under those exemptions."  However, section 832.7, subdivision (b)(1) expressly provides that "[n]otwithstanding subdivision (a) of Section 7923.600 of the Government Code, or any other law, the following peace officer or custodial officer personnel records . . . shall not be confidential and shall be made available for public inspection."

---

[10] Effective January 1, 2023, this section was repealed and recodified by Assembly Bill No. 473 (2021–2022 Reg.Sess.) (Stats. 2021, ch. 614, § 1) as Government Code, section 7923.600, subdivision (a), which provides:  "Except as provided in Sections 7924.510, 7924.700, and 7929.610, this division does not require the disclosure of records of complaints to, or investigations conducted by, or records of intelligence information or security procedures of, the office of the Attorney General and the Department of Justice, the Office of Emergency Services and any state or local police agency, or any investigatory or security files compiled by any other state or local police agency, or any investigatory or security files compiled by any other state or local agency for correctional, law enforcement, or licensing purposes."

Oakland appears to concede that in light of this language the trial court erred in permitting redaction under former Government Code section 6254, subdivision (f), arguing instead that the issue concerns only "three pages out of hundreds of redactions" and asserting without explanation that petitioners have waived their right to challenge these redactions.  We decline to consider Oakland's waiver argument, "since it is not stated under a separate heading, is not sufficiently developed, and is unsupported by citation of authority." (*T.P. v. T.W.* (2011) 191 Cal.App.4th 1428, 1440, fn. 12.)  We will order the trial court to modify its order such that former section 6254, subdivision (f) of the Government Code is not a proper basis for redaction.

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate its order of March 17, 2022, to conduct additional proceedings to reconsider which portions of the Guap report qualify for redaction under section 832.7, and to enter a new or modified order in conformance with this opinion. Costs are awarded to petitioners. (Cal. Rules of Court, rule 8.493(a)(1)(A).)

                                           _____

                                           Richman, J.

We concur:

_____

Stewart, P.J.

_____

Miller, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DARWIN BONDGRAHAM, et al.,<br><br>        Petitioners,<br><br>v.<br><br>THE SUPERIOR COURT OF ALAMEDA COUNTY,<br><br>        Respondent;<br><br>CITY OF OAKLAND, et al.,<br><br>        Real Parties in Interest. | A165187<br><br>(Alameda County Super.<br>Ct. No. RG20071657)<br><br>**ORDER CERTIFYING OPINION FOR PUBLICATION** |

**THE COURT:**

The opinion in the above-entitled matter filed on August 23, 2023, was not certified for publication in the Official Reports.  For good cause the request for publication by petitioners is granted.


Date: _____                    _____

                                                                    Stewart, P.J.

1

| | |
|---|---|
| Trial Court: | Alameda County Superior Court |
| Trial Judge: | Hon. Frank Roesch |
| Attorneys for Petitioners: | Law Office of Michael T. Risher<br>Michael T. Risher<br><br>Ferguson Law PC<br>Sam Ferguson<br><br>The Meade Firm PC<br>Tyler Meade<br>Seena Forouzan<br><br>Reiser Law PC<br>Michael Reiser<br>Michael Reiser, Jr. |
| Attorneys for Real Parties in Interest: | Bradley Bernstein Sands LLP<br>Erin Bernstein<br><br>Office of the City Attorney<br>Barbara Parker<br>Maria Bee<br>Michael Quirk<br>Cynthia Stein |

*Bondgraham v. Superior Court* (A165187)