Filed 1/30/26  Ortiz v. Saenz CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| PETER MICHAEL ORTIZ,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>ROBERT SAENZ,<br><br>Defendant and Respondent. | H052240<br>(Santa Clara County<br>Super. Ct. No. 23CH012147) |

Code of Civil Procedure section 425.16[1] was enacted to deter strategic lawsuits against public participation—otherwise known as SLAPP suits.  In this case, appellant Peter Michael Ortiz, a member of the San Jose City Council, filed a request for a civil harassment restraining order against respondent, Robert Saenz, a self-described internet broadcaster and journalist, based on Saenz's social media posts concerning Ortiz.  In response, Saenz filed an anti-SLAPP motion to strike the request.  Applying the two-step analysis, the trial court granted the motion finding that (1) Saenz's speech and conduct on his social media account was protected free speech regarding a public official, and (2) Ortiz failed to show a probability of prevailing on his harassment claim.  We affirm.

---

[1] All references are to the California Civil Code of Procedure unless otherwise noted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Events Leading Up to the Restraining Order Request*

Saenz operated a social media account under the username "@ESSJTIMES"[2] which, at the relevant time, was accessible to the public and had almost 80,000 followers. Saenz used the account to disseminate news pertaining to the Eastside San Jose community. He would "post" content on the account by uploading or sharing a video, image, or message. On occasion, Saenz also employed the platform to voice criticism of the local school boards, city council, and mayor of San Jose. During the time period at issue in this case, Ortiz was a member of the San Jose City Council.

In the fall of 2023, Saenz posted a video on his account criticizing another elected member of the San Jose City for promoting a children's event known as "Drag Queen story time." In the video, Saenz claimed the event was "inherently sexual" and posed a threat to children. He included the council member's social media account in his post (a practice commonly referred to as "tag" or "tagging"), after which Saenz's followers began posting negative messages on that council member's account.

Ortiz, in defense of his colleague, used his social media account to report Saenz to the platform for hate speech and misinformation, and posted a statement on his account suggesting that Saenz and his followers were targeting and threatening his fellow council member. Ortiz and his girlfriend, Brenda Zendejas,[3] also posted messages on their accounts asking the public to report Saenz to the social media platform for hateful speech.

In response, Saenz shared their messages on his account, with his added comment stating, in part, "You are throwing a ralley [*sic*] to label this page a hate page? Are you kidding me. I am only saying this once this last time." Saenz's followers responded by

---

[2] Because Saenz was the sole operator of the account, we refer to the account as "Saenz" in lieu of the username.

[3] Saenz alleged Zendejas was also Ortiz's campaign manager.

2

posting negative remarks about Ortiz and Zendejas, including accusing Ortiz of being a pedophile for defending his fellow council member.

A few months later, in December 2023, Saenz posted a video and message on his account referring to Ortiz and the same colleague as "brown puppets" and tagged Ortiz's social media account. Saenz stated that they did "not represent the Latino and Mexican community at all. Especially the majority of the community that is against grooming our children. We need those brown puppets pushing that crap on our children out of City Hall ASAP!" In the video, Saenz called Ortiz a "showered cholo" and alluded to Ortiz being a "sick fuck." Other account users responding to Saenz's post referred to Ortiz as a pedophile.

Saenz posted a second video to his account making reference to Ortiz. This video appeared to be altered by Saenz and opposed what another user called the "trans kids" movement. Saenz alleged that "Big Pharma" profited from transgender children due to increased healthcare costs and suggested through imagery that Ortiz and his colleague were puppets of "Big Pharma." In a voiceover, Saenz demanded the council members "[l]eave the babies alone" and declared "We gotta get [Ortiz's colleague] out. . . and [Ortiz] comes in backing him. So does his little girlfriend." In another section of the post, text appeared on the screen "Please watch the whole video. We need to get these people out of City Hall ASAP. Protect our children!" The video showed images of Ortiz and two other council members with a voiceover by Saenz stating "We gotta clean them out and put in new brown people who actually care about the community." Saenz's video ends with an image proclaiming his account was a "hate free" page for "those who do not groom/sexualize children." Responses from other account users to the video contained insinuations that supporters of the "trans kids" movement were child predators.

Thereafter, based solely on those social media posts by Saenz and the responses by Saenz's followers, Ortiz sought a civil harassment restraining order against Saenz. In his petition for the restraining order, Ortiz alleged Saenz had harassed him and Zendejas "on

3

[Saenz's] social media posts, claiming that we are attacking his social media page. As a result, [Saenz's] social media followers have made hateful comments and threats towards [them]." Specifically, Ortiz claimed Saenz and his followers falsely accused him of "grooming" or sexualizing children and labeled him a pedophile. Ortiz alleged that the social media posts portrayed him as "a danger to children" and he was "afraid that [Saenz] or one of his followers will act on [Saenz's] calls to 'protect our children' by physically attacking [him or Zendejas]." Ortiz further stated that these statements damaged his "ability to work with members of [the] community," harmed his reputation, and caused him emotional distress.

In support of his request, Ortiz attached several exhibits, including a printout of Saenz's social media account profile, which noted in all capital letters: "the views/opinions expressed in the comments section do not reflect those of the ESSJ Times," screenshots of Saenz's social media posts, as well as comments from other account users responding to Saenz's posts. To support his allegation that Saenz's posts portraying him as a child groomer or pedophile could incite harassment, threats, or violence, Ortiz attached an article reporting an increase in harassment, threats, and violence toward the LGBTQ community resulting from groups that demonize and label its members as pedophiles or groomers.

On December 21, 2023, the trial court issued a temporary restraining order (TRO) pending the hearing, which included orders that Saenz not "[h]arass, . . . stalk, threaten . . . or disturb the peace [of the protected persons]," and that he not "publish defamatory statements about [Ortiz and Zendejas] . . . use the name, image, likeness or otherwise reference the protected parties in social media posts in connection [with] crimes against children; or encourage others to do the same."

4

### B. Saenz's Anti-SLAPP Motion and Post-TRO Events

In February 2024, prior to the restraining order hearing, Saenz filed a special motion to strike Ortiz's request, alleging that the proceedings impermissibly curtailed Saenz's right to free speech, petition and assembly. In opposition to Saenz's anti-SLAPP motion, Ortiz filed two supplemental declarations providing further background for the events leading up to his request and describing Saenz's post-TRO conduct.

In the supplemental declarations, Ortiz alleged that shortly after issuance of the TRO, Saenz posted videos commenting on the litigation and TRO, asserting the TRO was obtained based on false information and violated the first amendment rights of reporters and freedom of the press. In his posts, Saenz stated, "I firmly believe they're covering [*sic*] the fact that they had people threaten me because they labeled my page a hate page." In total, Ortiz alleged that Saenz posted and then deleted more than 11 videos concerning him, Zendejas, and the underlying proceedings in violation of the TRO.

In support of his claims, Ortiz submitted screenshots of videos Saenz posted on his social media account. One video, posted after Saenz was served with the TRO, displayed Saenz's own press release regarding the order and his voice stating: "So I have Councilman Peter Ortiz putting a restraining order on me, yes, Peter Ortiz, active homeboy was tatted, gangs, now he's [unintelligible] scared for himself, he says that he gets nervous in public because of me." The video displayed an image of Ortiz's prior mugshot and referenced his criminal history, which Ortiz acknowledged was public information, accompanied by additional commentary from Saenz calling Ortiz a "weirdo," stating that he was the "same weirdo that stuck up for [Ortiz's colleague] after I called him out saying why are you bringing our kids around this tranny story hour. . . ." Saenz also posted a video solicitating information from Ortiz's former classmates because Saenz was "investigating a tip [he] received" regarding Ortiz.

In another video, Saenz stated the Mercury News's coverage of the litigation was biased, stating "[t]his article is not a news report; it's an attack on you guys and the ESSJ

5

times, that's all it is."  Saenz also shared on his account an online news article about the litigation entitled "Controversial City Councilmember's Temporary Restraining Order Chills Political Speech on Social Media."

In his third supplemental declaration filed a week before the hearing, Ortiz stated that Saenz "continue[d] to claim that I'm a pedophile, I groom children, and that I'm crooked.  In some of these posts, [Saenz] infer[red] that I am a child molester or pedophile by saying that I'm only in a relationship with Ms. Zendejas so that I can get to her children or touch her children."

He claimed that Saenz threatened to " 'silence me' or 'end me' – indicating to his followers that he is going to take my life," and encouraged his followers to take unspecified action.  Ortiz noted in one video posted in March 2024, "[Saenz] called on his followers to show up at Ms. Zendejas' children's baseball event, causing Ms. Zendejas and I to fear for the safety of the children."  Ortiz also asserted that"[i]n another recent video, [Saenz] is swinging a baseball bat pretending to hit other people – specifically what he describes as small business owners in San Jose – stating that he is going to come after any small business owner that supports me."

About a week before the hearing, Saenz posted a video encouraging his followers to attend the court proceedings, promising a free tamale for any person that takes "a selfie with [Ortiz's] crooked ass lawyer."  Saenz referred to Ortiz as a "crooked councilmember," suggesting that Ortiz's restraining order request was filed because Saenz "called them out" on their support of "Drag Queen story time."  In another video, Saenz stated, "we see what's going on, what they're trying to pull with the kids.  You see the corruption he is pulling at City Hall."

### C.    *The Anti-SLAPP Motion Hearing and Order*

At the hearing, Saenz's counsel renewed his evidentiary objections, contending that Ortiz's declarations failed to specify the allegedly harassing or defamatory

6

statements and were speculative absent transcripts of the videos or the videos themselves. Counsel also asked the court to strike Ortiz's last declaration, filed about a week prior to the hearing, as untimely. The court declined to strike the declaration and stated that it was allowed to consider hearsay declarations in the context of restraining order proceedings.

After hearing oral arguments from counsel, the court took the matter under submission and filed its order a few days later. The court identified the two-step analysis for anti-SLAPP motions: (1) that defendant identify and show that the challenged claims arise from a protected activity, and (2) that if the showing is made, then the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated, assuming the truth of plaintiff's showings.

As to the first prong, the court found that the basis of Ortiz's claims all arose from Saenz's speech through his social media posts on issues of public interest. The court stated, "[t]he comments made are related to who [Saenz] believes should be serving on the City Council and what policies he believes they are, or should be pursuing." The court found Saenz met his burden under the first prong to show that his speech, the basis of Ortiz's request for restraining orders, fell under the protection of the anti-SLAPP statute.

As to the second prong, the court ruled that Ortiz did not establish a probability of prevailing on the merits because the court found that Saenz's speech fell within the protections of the First Amendment. The court rejected Ortiz's contention that Saenz's statements he would "silence" and "end" Ortiz could only be construed as threats of physical harm. The court stated, "[a]lthough the language is hyperbole to the extreme, and certainly not the most productive language to use in a political debate, the context of the comments belie the suggestion that they are threats of physical harm." The court observed that the statements could reasonably be read as referring to Ortiz's elected position on the City Council, which is protected by the First Amendment. The court

found that Saenz's speech did not incite violence against Ortiz but instead addressed the political process and encouraged others to take political action. Commenting that Saenz's "rhetoric is emblematic of much of what is wrong with today's political climate, where personal attacks are substituted for legitimate debate of issues," the court nonetheless concluded that Saenz's "unfortunate choice" of words did "not deny his comments the protections afforded by the First Amendment." The court terminated the TRO and granted Saenz's motion in its entirety.

This appeal followed.

## II.    DISCUSSION

Ortiz argues the court erred under *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995 by failing to consider whether each of Saenz's statements qualified as protected activity under the first prong of the anti-SLAPP analysis. He further challenges the court's second-prong determination that he failed to demonstrate a probability of prevailing on his harassment petition, asserting that Saenz's speech lacked legitimate purpose, constituted harassment, and incited violence. Ortiz also maintains that Saenz's alleged violations of the TRO, standing alone, established a probability of success to defeat Saenz's anti-SLAPP motion. We do not find the contentions persuasive.

### A.    *General Legal Principles and Standard of Review*

"The Legislature enacted [section 425.16] to combat 'a disturbing increase' in strategic lawsuits against public participation (SLAPPs): 'lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.' [Citation.]" (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1242 (*Geiser*).) A litigant may file a special motion under the anti-SLAPP statute to strike such claims at an early stage. (§ 425.16, subd. (b)(1); *Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 [describing the motion as "a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity"].) An anti-SLAPP motion may be filed

8

to challenge a section 527.6 request for civil harassment restraining orders. (*Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 652 (*Thomas*).) Evaluating an anti-SLAPP motion requires a two-pronged inquiry. "Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged. [Citations.]" (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).)

If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least minimal merit or, in other words, a sufficient probability of prevailing on the merits. (*Park, supra,* 2 Cal.5th at p. 1061.) To prevail on the merits of a civil harassment petition, the plaintiff must meet their burden to show unlawful harassment as defined by section 527.6, discussed in detail below. (*Thomas*, *supra*, 126 Cal.App.4th at p. 662.) "[T]he court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) The court does not weigh the evidence but accepts the "plaintiff's submissions as true and consider[s] only whether any contrary evidence from the defendant establishes its entitlement to prevail as a matter of law." (*Park*, at p. 1067.)

We review an order granting an anti-SLAPP motion de novo and "[w]e exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity." (*Park*, at p. 1067.)

### B.    *First Prong - Protected Activity*

Based on our independent review of the record, we conclude Saenz met his burden under the first prong of the analysis to show Ortiz's claim arises from conduct protected by the anti-SLAPP statute.

When analyzing an anti-SLAPP motion, "courts should analyze each claim for relief—each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected . . . ."

9

(*Bonni v. St. Joseph Health System*, *supra*, 11 Cal.5th at p. 1010.) "A defendant's burden on the first prong is not an onerous one. A defendant need only make a prima facie showing that the plaintiff's claims arise from the defendant's constitutionally protected free speech or petition rights." (*Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 112.)

Under the anti-SLAPP statute, protected activity—acts in furtherance of a person's right of petition or free speech—includes, "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest," (§ 425.16, subd. (e)(3)), and "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).) It is settled that websites accessible to the public, such as social media platforms, are "public forums" for purposes of the anti-SLAPP statute. (*Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1366; *Jackson v. Mayweather* (2017) 10 Cal.App.5th 1240, 1252 [postings on social media platforms satisfied public forum requirement].) However, not every post on a website involves a public issue. (*D.C. v. R.R.* (2010) 182 Cal.App.4th 1190, 1226 [threats posted online were not protected speech].)

Although undefined in the statute, "public issue" or "public interest" must be construed broadly (§ 425.16, subd. (a)), and our high court has outlined the test for determining whether the challenged activity falls within it. (*Geiser*, *supra*, 13 Cal.5th at p. 1250; *FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 151 (*FilmOn.com Inc.*).)[4] First, taking the position of a "reasonable, objective observer," the court must determine "what public issue or issues the challenged activity implicates." (*Geiser*, at

---

[4] Both opinions address "a public issue or an issue of public interest" under section 425.16, subdivision (e)(4). We see no basis to conclude that our high court's analysis would not likewise govern the identical phrase in subdivision (e)(3) of the statute. (See *Bernstein v. LaBeouf* (2019) 43 Cal.App.5th 15, 22-23, fn. 5 [applying the high court's test to both subdivisions (e)(3) and (e)(4).)

pp. 1243, 1254.)  This "first step is satisfied so long as the challenged speech or conduct, considered in light of its context, may reasonably be understood to implicate a public issue, even if it also implicates a private dispute."  (*Id*. at p. 1253.)

Next, "we look to the 'functional relationship' between the challenged activity and the 'public conversation' about that issue, and ask whether the activity ' "contribute[s]" ' to public discussion of the issue.  [Citation.]"  (*Geiser, supra,* 13 Cal.5th at p. 1249, quoting *FilmOn.com Inc*., at pp. 149-150.)  The court, on this second step, is not concerned with the " 'social utility of the speech at issue, or the degree to which it propelled the conversation.' "  (*Geiser* at p. 1255, quoting *FilmOn.com Inc*. at p. 151.) The analysis must account for the context of the challenged activity—its audience, speaker, and purpose.  (*FilmOn.com Inc*., at pp. 148-149 ["if the social media era has taught us anything, it is that speech is rarely 'about' any single issue."]; *Geiser*, at p. 1252 ["Language, of course, cannot be interpreted apart from context"].)

Generally, though not dispositive, a statement involves a public issue when it concerns a person or entity in the public eye, conduct that could directly affect a large number of people beyond the direct participants, or a topic of widespread, public interest. (*Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913, 924; accord *Geiser*, *supra*, 13 Cal.5th at p. 1248.)

Here, Ortiz contends that the trial court erred in concluding that all of Saenz's conduct was protected activity under the anti-SLAPP statute.  While acknowledging that some conduct may constitute protected political speech, Ortiz argues that Saenz's other conduct—attacks on Ortiz's character, encouraging his followers to "take action" against Ortiz, and violations of the TRO—falls outside the statute's protection.  Based on the specific facts of this case, we conclude otherwise.

### 1.     *Saenz Satisfied the First Prong*

First, we note that both parties agree that all the conduct forming the basis for the requested restraining order arose solely out of speech posted by Saenz in a public forum through his social media account.  (*Jackson v. Mayweather*, *supra*, 10 Cal.App.5th at p. 1252.)  There are no allegations in either the initial petition or the supplemental declarations that Saenz engaged in any direct, personal, or physical contact with Ortiz or Zendejas.  Second, the parties also agree that, at all relevant times, Ortiz was an elected public official.  The only dispute is whether all of Saenz's statements were made in connection with an issue of public interest.

Viewing Saenz's conduct in the full context of his social media activity, his statements and the videos he posted, though provocative, inflammatory and challenging, are more reasonably understood as criticism of Ortiz's character and qualifications as council member, his conduct in office, and a call for the public to vote him out of office. The law is settled that such speech implicates a public issue, furthers discussion, and is entitled to anti-SLAPP protection.  " 'Public discussion about the qualifications of those who hold or who wish to hold positions of public trust presents the strongest possible case for applications of the safeguards afforded by the First Amendment.'  [Citation.]" (*Matson v. Dvorak* (1995) 40 Cal.App.4th 539.)  The character and qualifications of a candidate for public office constitutes a "public issue or an issue of public interest." (*Vogel v. Felice* (2005) 127 Cal.App.4th 1006, 1015; *Conroy v. Spitzer (*1999) 70 Cal.App.4th 1446, 1451.)

Here, each challenged statement and act was made in a public forum, addressed matters of public interest, and was directed to the public to promote political discourse or action: to remove Ortiz from office.  Saenz directed those statements to his 80,000 followers and urged them to remove the council members from office.  In the first two videos that formed the basis for Oritz's request for the restraining order, Saenz specifically calls to get Ortiz and his colleague "out of City Hall ASAP."  Similarly, after

the trial court issued the TRO, Saenz continued to criticize Ortiz's character, qualifications, and fitness for office, cloaked in the same hyperbole and conspiratorial rhetoric, and again urged his followers to both vote Ortiz out of office and to share their positions with Ortiz regarding his qualifications. Thus, the purpose of the speech was to further public discussion regarding the suitability of Ortiz for his office and suggested political recourse for those who agreed with Saenz.

Ortiz argues that defamatory statements—such as falsely accusing someone of being a pedophile[5] or a convicted felon—fall outside First Amendment protection and therefore cannot be shielded by the anti-SLAPP statute. But Ortiz conflates two distinct inquiries: whether the statute applies at all, and whether Ortiz has shown a probability of prevailing. At the first prong of the anti-SLAPP analysis, the legitimacy and validity of the speech is not typically at issue; otherwise, the second prong would be rendered meaningless. (*Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 305.)

Additionally, with respect to Saenz's posts after the issuance of the TRO, which Ortiz contends violated the TRO, the challenged speech addressed the use of legal process by government officials to silence reporters—an issue long recognized as one of public interest. (See, e.g., *Association for Los Angeles Deputy Sheriffs v. Los Angeles Times Communications LLC* (2015) 239 Cal.App.4th 808, 821 [summarizing cases invalidating injunctions and restraints against the press on matters involving government officials].) Although Ortiz characterizes Saenz's conduct as further harassment and mockery of his fear, the record, viewed from the standpoint of a reasonable observer, more plausibly reflects commentary on Ortiz's fitness as a public official based on how Ortiz responded to public criticism. In the challenged post, Saenz stated his belief that

---

[5] Saenz denies calling Ortiz a pedophile. However, proof that defendant did not commit the alleged acts is immaterial to the first prong of the anti-SLAPP analysis. (*Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, 446.)

Ortiz was improperly using the legal process to "cover[ ] the fact that they had people threaten [Saenz] because they labeled [his] page a hate page," and in retaliation for Saenz's criticism of Ortiz's conduct as an elected official. Saenz also directed his remarks towards his followers and suggested they read news articles about his case. This supports the contention that his conduct was undertaken in connection with a public issue and in furtherance of public discussion on the issue. (*Geiser*, *supra,* 13 Cal.5th at p. 1255 ["conduct that gives rise to a lawsuit [that] attracts such media attention . . . can be an indicator that such conduct was undertaken 'in connection with' a public issue"].)

Applying these settled principles governing speech about elected officials, we conclude that Saenz's conduct was made in connection with a public issue or matter of public interest under section 425.16, subdivisions (e)(3) and (e)(4).

### 2. Ortiz's Other Arguments

Ortiz also argues that, as a matter of law, harassing conduct[6] and conduct inciting violence are not constitutionally protected activities. Our high court has recognized that conduct which is illegal as a matter of law is not protected under the SLAPP statutes. (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 424.) However, the illegal conduct must either be conceded by the defendant or conclusively established by the evidence. (*Ibid.*) One court has held that "true threats" of violence are also not protected activity under the first prong of the anti-SLAPP analysis. (*D.C. v. R.R.*, *supra*, 182 Cal.App.4th at p. 1218.) A "true threat" is a statement " 'where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.' " (*Ibid.*, quoting *Virginia v. Black* (2003) 538 U.S. 343, 359.) In *D.C. v. R.R.*, a student's statements to a fellow student that he wanted to "rip out" his heart and feed it to him, "kill" him, and "pound [his] head in with an ice

---

[6] Ortiz again conflates the first and second prongs in the anti-SLAPP analysis. Whether the speech and conduct at issue constituted harassment under section 527.6 relates to the second prong.

pick" constituted "true threats" that were not protected by the SLAPP statutes. (*Id*. at pp. 1219-1220, 1223.)

None of these exceptions apply here. The record does not establish that Saenz engaged in conduct that was illegal as a matter of law. An allegation by the plaintiff that the defendant engaged in civil harassment, as in this case, does not by itself establish the common law illegality exception. (*Dziubla v. Piazza* (2020) 59 Cal.App.5th 140, 151 [plaintiff's claims that the challenged activity constituted harassment under section 527.6 was not sufficient to establish illegality to defeat the first prong of the anti-SLAPP analysis].) "[I]llegal means criminal and not merely a violation of some statute. [Citation.]" (*Ibid.*; see also *Laker v. Board of Trustees of California State University* (2019) 32 Cal.App.5th 745, 762 ["purported illegality of [defendant's] conduct did not preclude application of the anti-SLAPP statute"].)

Nor does Saenz's conduct constitute a "true threat." Ortiz claimed that Saenz threatened to "silence" and "end" him, urged his followers to "take action," and incited violence by posting a video of Saenz swinging a baseball bat. However, when considered in context, these statements and actions were made in connection with Saenz's broader political commentary and efforts to encourage Ortiz's removal from office. The further allegation that Saenz "called on his followers to show up at Ms. Zendejas' children's baseball event" lacks any accompanying claim that Saenz directed his followers to engage in violence, unlawful behavior, or physical harm. Viewed from the standpoint of a reasonable person, Saenz's statements and conduct do not evidence an intent to inflict bodily harm or to incite others to do so.

Next, Ortiz contends the trial court failed to undertake an individualized analysis of each statement and misapplied the law.[7] The record does not support his contentions.

---

[7] Because we apply an independent review, it is immaterial whether the trial court expressly addressed each of Saenz's statements in its ruling. Nevertheless, we will address Ortiz's argument for clarity.

15

The court's questions and comments at the hearing reflect that it considered each allegation, including its pointed inquiry to Saenz's counsel: "Is it political speech to encourage his supporters to show up at [Ms. Zendejas' children's] baseball game[?]" The court's order cited the proper legal authorities governing anti-SLAPP motions, and Ortiz does not contend otherwise. As the trial court found, the basis of Ortiz's civil harassment claims arose exclusively and entirely from Saenz's social media posts centered around what policies Saenz believes elected officials serving on the city council should endorse and how they should conduct themselves in the face of opposition from their constituents. Such conduct fell squarely within the realm protected by section 425.16.

In *Bonni v. St. Joseph Health System*, *supra*, 11 Cal.5th at page 1012, our high court held that, where the plaintiff "has alleged various acts as a basis for relief and not merely as background, each act or set of acts must be analyzed separately." There, the defendant filed an anti-SLAPP motion to strike an entire retaliation cause of action. (*Id.* at p. 1009.) The complaint, however, alleged at least 19 distinct courses of conduct in support of the retaliation cause of action. (*Ibid.*) The court rejected the argument that it need only consider whether the "gist" of the allegations was protected activity and reaffirmed that the anti-SLAPP analysis requires examining each specific act supporting the claim, excluding allegations offered merely as background. (*Id.* at p. 1012.) However, the court in *Bonni* did not mandate that trial courts set forth their analysis of each act on the record, and Ortiz has not demonstrated that express findings on every statement were required. (See, e.g., *Lien v. Lucky United Properties Investment, Inc.* (2008) 163 Cal.App.4th 620, 625 [grant of anti-SLAPP did not require statement of decision].)

Accordingly, the trial court's omission of an act-by-act discussion of the allegations supporting Ortiz's harassment claim does not establish error. We do not presume error in the absence of a showing to the contrary; rather, "[w]e presume the trial

16

court knew and properly applied the law absent evidence to the contrary. [Citations.]" (*McDermott Will & Emery LLP v. Superior Court* (2017) 10 Cal.App.5th 1083, 1103.)

For the reasons stated above, we conclude that Saenz satisfied the first prong by showing that the claims arose from constitutionally protected free speech.

### C. Second Prong - Probability of Prevailing

Based on our independent review of the record, we conclude that Ortiz failed to meet his burden under the second prong of the analysis to establish minimal merit to his civil harassment claim.

If the moving party satisfies the first prong, as it has here, the burden shifts to the nonmoving party to show its claims have at least "minimal merit." (*Park*, *supra*, 2 Cal.5th at p. 1061.) The nonmoving party must demonstrate a probability of success (*Olson v. Doe* (2022) 12 Cal.5th 669, 678), and it " 'must be made upon competent admissible evidence.' [Citations.]" (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940.) This second step has been described as a " 'summary-judgment-like procedure.' " (*Id.* at p. 945.) "[T]he court may consider affidavits, declarations, and their equivalents if it is reasonably possible the proffered evidence set out in those statements will be admissible at trial. Conversely, if the evidence relied upon *cannot* be admitted at trial, because it is categorically barred or undisputed factual circumstances show inadmissibility, the court may not consider it in the face of an objection." (*Id.* at p. 949.)

Here, the only claim at issue is Ortiz's civil harassment request against Saenz. Section 527.6 defines harassment, in part, as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, *and that serves no legitimate purpose*." (§ 527.6, subd. (b)(3), italics added.) The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress and must actually cause

17

substantial emotional distress to the petitioner. (*Ibid.*) A course of conduct is "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means. . . ." (*Id.*, subd. (b)(1).) Constitutionally protected activities *are expressly excluded* from this definition. (*Ibid.*) Section 527.6 requires "clear and convincing" evidence that harassment, as defined by the statute, has occurred. (*Id.*, subd. (i); *Thomas v. Quintero*, *supra*, 126 Cal.App.4th at p. 662.)

Appellate courts have held that, when analyzing this second step of the anti-SLAPP motion, "[w]here the law requires proof by a higher standard for a cause of action, such as clear and convincing evidence, a court must evaluate the plaintiff's evidentiary showing bearing in mind the higher standard of proof. [Citations.]" (*Macy's, Inc. v. International Union of Operating Engineers, Local 39* (2022) 83 Cal.App.5th 985, 991.) Some appellate courts interpret this to mean "the plaintiff must instead establish only a 'probability' that he or she can produce clear and convincing evidence." (*Edward v. Ellis* (2021) 72 Cal.App.5th 780, 793.)

### 1.    *Ortiz Did Not Meet His Burden Under the Second Prong*

Ortiz has not demonstrated a probability of success for his harassment claim. Because the Legislature excluded constitutionally protected activity from a course of conduct that would satisfy section 527.6, subdivision (b)(1), Ortiz must show that Saenz engaged in unprotected conduct that meets the statutory criteria. Based on the record before us, Ortiz has not demonstrated that Saenz engaged in such conduct or that Saenz's speech served no legitimate purpose, a necessary element to a civil harassment claim. (*Id.*, subds. (b)(1)-(3).) The evidence showed that Saenz posted the videos, images and messages to, as stated above, further public discourse on issues concerning an elected

18

official's character, qualifications, and conduct. (*Byers v. Cathcart* (1997) 57 Cal.App.4th 805, 812 ["Legitimacy of purpose negates harassment."].)

Next, the declarations on which Ortiz relies lack competent, admissible evidence to support his allegations. "[A] plaintiff seeking to demonstrate the merit of the claim 'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.' [Citations.]" (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.) Many of Ortiz's allegations as it pertained to Saenz's alleged threats were vague and conclusory, and not evidence. While Ortiz argued that harassment occurred, he failed to provide record citations of specific, concrete facts demonstrating that Saenz engaged in unlawful violence, made an actual or implied credible threat of violence, or engaged in other harassing conduct. "[D]eclarations that lack foundation or personal knowledge, or that are argumentative, speculative, impermissible opinion, hearsay, or conclusory are to be disregarded. [Citation.]" (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 26 [considering the plaintiff's evidentiary in opposition to an anti-SLAPP motion].)

Moreover, even if we consider Ortiz's submissions as true, he has not alleged the necessary facts to establish a prima facie case for harassment. Ortiz claims Saenz made credible threats of violence and engaged in an intentional course of harassing conduct directed at Ortiz. (§ 527.6, subds. (b)(1)-(2).) However, to establish harassment under the credible threats or course of conduct theories, Ortiz must provide at least minimal evidence that the conduct served no legitimate purpose. (*Id.*, subds. (b)(2)-(3).) As stated above, Ortiz has not met this burden.

Additionally, although Ortiz's *arguments* on appeal present a distressing scenario for civil harassment, legal arguments are not facts. Here, the record lacks specific facts to substantiate his arguments. Ortiz relies heavily on Saenz's post concerning the children's baseball event and a separate post in which Saenz pretends to swing a baseball bat as proof of harassment. Saenz's statements in urging the public to show up at Zendejas'

19

children's baseball event, though highly inappropriate and irresponsible, contain no suggestion for his followers to engage in violence or unlawful activity there. Nor is there any specificity or context: it is not clear when this was posted, exactly what was said or if the post included information about what the "baseball event" entailed, the actual location[8] or time said event was occurring. As to the video depicting Saenz swinging a baseball bat, there is no evidence that the video was posted in relation to or simultaneously with the post asking his followers to show up at the children's baseball event. For example, had the video of Saenz swinging the baseball bat been posted a week after the children's baseball event, it would be hard to draw the connection that his swinging the bat had any relation to inciting violence at the children's event. Additionally, Ortiz's own declaration stated that the video was posted with commentary suggesting Saenz was going to "come after any small business owner" that supported Ortiz, not Ortiz or his girlfriend or her children. Viewed in the context of Saenz's other posts, as our high court has encouraged, the evidence demonstrated that Saenz's speech was focused on urging followers to take action in the political process to vote Ortiz out of office or express their opposition to the council member's positions.

Even assuming Saenz irresponsibly likened Ortiz to child groomers and pedophiles, his statements—however extreme and hyperbolic—were directed at whether Ortiz, as an elected government official, was qualified to sit on the San Jose City Council. Because the record reflects a legitimate purpose, Ortiz fails to show a prima facie case of harassment. The cases Ortiz cites are distinguishable: *E.G. v. M.L.* (2024) 105 Cal.App.5th 688, 702 (no legitimate purpose for daughter's harassing social media posts falsely accusing her mother's girlfriend as someone who supports pedophilia, kidnapping, and child abuse), and *Grenier v. Taylor* (2015) 234 Cal.App.4th 471, 485 (cause of action

---

[8] During oral argument, Ortiz's counsel stated that Saenz identified the location of the baseball event in his post. However, there is no evidence in the record confirming that statement.

was not for harassment). We express no opinion on whether the allegations establish a prima facie case for defamation, as that was not the cause of action pleaded by Ortiz. (*Medical Marijuana, Inc. v. ProjectCBD.com* (2020) 46 Cal.App.5th 869, 883 [issues to be determined in an anti-SLAPP motion are framed by the pleadings].) Nor do we conclude that a defamatory course of conduct could never meet the minimal merit standard for a civil harassment claim. Our conclusion is simply that, based on the facts pleaded in this case, Ortiz has not met the minimal merit standard to establish that Saenz's speech and conduct constituted harassment under section 527.6.

### 2. *Ortiz's Additional Arguments*

Ortiz contends that both the trial court and Saenz erred in distinguishing this case from *City of Los Angeles v. Herman* (2020) 54 Cal.App.5th 97 (*Herman*), where the reviewing court upheld a workplace violence restraining order protecting a city attorney from a citizen's threats. In *Herman*, the citizen had been physically removed from city council meetings more than 100 times. (*Id.* at p. 100.) During several meetings, in the presence of the city attorney, in an angry and threatening manner, Herman repeatedly disclosed the city attorney's home address, and, on one occasion, as he was being escorted out of the meeting, "stated loudly and in a threatening manner, ' "fuck you [city attorney]. I'm going back to Pasadena [where the attorney resided] and fuck with you." ' " (*Ibid*.) Believing the city attorney to be of Jewish descent, the citizen drew Ku Klux Klan and Nazi symbols next to the attorney's name and listed the attorney's home address on public speaker cards submitted to the city council. (*Ibid.*) The reviewing court affirmed the restraining order, concluding that a reasonable viewer would view such conduct as personal threats that served no legitimate purpose. (*Id.* at pp. 102-103.)

*Herman* is distinguishable. Unlike the restrained party in *Herman*, whose conduct evinced a continuing campaign of threatening behavior toward the protected party in his presence, and served no legitimate purpose, there is no evidence that Saenz made any

21

direct or indirect threats of personal violence against Ortiz either orally or online, disrupted any council meetings where Ortiz was present, disclosed Ortiz's home address, or acted in an agitated or angry manner toward Ortiz in his presence. Rather, Saenz's speech and conduct was directed at the council member's character and qualifications to maintain his office, which is a legitimate purpose, even if it was replete with less than productive rhetoric.

The circumstances here fall far short of the threatening conduct present in the other cases Ortiz cites, where courts concluded that such conduct was unprotected by the First Amendment. (*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1252-1258 [activist group, known to support illegal activities including assault, trespass and vandalism, targeted a laboratory employee on its website and threatened physical violence]; *City of San Jose v. Garbett* (2010) 190 Cal.App.4th 526, 531 [defendant with a history of threatening city employees alluded to mass shootings to effectuate change].)

Finally, we address Ortiz's argument that he met the second prong where there is proof Saenz violated the TRO. The trial court did not specifically address whether Saenz's post-TRO conduct violated the orders. Notably, the trial court issued a limited TRO that Saenz not "[h]arass, . . . stalk, threaten . . . or disturb the peace [of the protected persons]," and that he not "publish defamatory statements about [Councilmember Ortiz and Ms. Zendejas] . . . use the name, image, likeness or otherwise reference the protected parties in social media posts in connection [with] crimes against children; or encourage others to do the same."[9] We are not persuaded that the evidence

---

[9] Moreover, we question the breadth of the trial court's loosely framed temporary restraining order in light of the well-established precedent that "[p]rior restraints [on free speech] are highly disfavored and presumptively violate the First Amendment. [Citations.]" (*Evans v. Evans* (2008) 162 Cal.App.4th 1157, 1167, citing *Maggi v. Superior Court* (2004) 119 Cal.App.4th 1218, 1225.) Accordingly, we also question whether a violation of such an order, standing alone, could constitute evidence to support the issuance of a permanent restraining order

showed Saenz violated the TRO for the reasons stated above regarding the deficiencies in Ortiz's supporting declarations.

Even assuming Saenz violated the TRO, Ortiz has not shown that the alleged violations establish a probability of prevailing on his civil harassment claim. Ortiz's initial petition relied solely on two videos posted by Saenz, each of which served a legitimate purpose: to encourage the public to seek Ortiz's removal from office. Ortiz's subsequently filed supplemental declarations, though asserting harassment in conclusory terms, failed to set forth concrete, specific facts that demonstrated that those posts or any subsequent posts constituted harassment. The cases Ortiz relies on in support of his argument pertain to restraining orders under the Domestic Violence Prevention Act (DVPA), which is inapplicable. (See *Michael M. v. Robin J.* (2023) 92 Cal.App.5th 170, 181 [DVPA]; *Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1280 [DVPA].) Violating a temporary restraining order under the DVPA may constitute an act of abuse for which a permanent restraining order may issue. (*N.T. v. H.T.* (2019) 34 Cal.App.5th 595, 603.) Those authorities, however, do not establish that the same principle applies in civil harassment proceedings, as the DVPA authorizes protective orders on broader grounds than those permitted under section 527.6. The "DVPA confer[s] a discretion designed to be exercised liberally, at least more liberally than a trial court's discretion to restrain civil harassment generally." (*Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 334.) Notably, a lower level of proof is required for issuance of a protective order under the DVPA—a preponderance of the evidence, rather than clear and convincing evidence. (*Ibid.*; see also *Cooper v. Bettinger* (2015) 242 Cal.App.4th 77, 90, fn. 14 [reviewing court declined to apply legal authorities interpreting the DVPA as controlling on standard for renewal of civil restraining orders under section 527.6].)

For the reasons stated above, Ortiz therefore has not demonstrated a probability of prevailing on his claim against Saenz, and we discern no error in the trial court's order granting Saenz's anti-SLAPP motion.

### III.  DISPOSITION

The order granting the special motion to strike under section 425.16 is affirmed.

_____

RODRIGUEZ, J.*

WE CONCUR:

_____

GREENWOOD, P. J.

_____

LIE, J.

*Ortiz v. Saenz*
H052240

_____

* Judge of the San Diego County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.